## Richmond

WILLIAM I. COOPER, T/A COOPER'S v. CHARLES A. KNOX AND HELEN KNOX, INDIVIDUALLY AND T/A CHARLES A. KNOX CO.

January 16, 1956.

Record No. 4451.

Present, Hudgins, C. J., and Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*John E. Mayo* and *Butzner & Hicks,* for the plaintiff in error.

*Dabney Overton,* for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

■ William I. Cooper filed his motion for judgment against Charles A. Knox and Helen Knox, individually and as partners trading as Charles A. Knox Company, to recover an open account totaling $5,267.47. Charles A. Knox denied owing a part of the claim and asserted a setoff against the residue. Both defendants denied that Helen Knox had been or was a partner in the business. The jury returned a verdict against both defendants for the full amount of plaintiff's claim. The trial court entered a judgment on the verdict against Charles A. Knox and set aside the verdict against Helen Knox. Plaintiff obtained this writ of error to review the judgment dismissing Helen Knox from the case.

The only question presented is whether the evidence was sufficient to sustain the verdict of the jury finding Helen Knox a partner in the business of Charles A. Knox or Charles A. Knox Company.

We have a verdict disapproved by the trial judge. Such a verdict is not entitled to the same weight as is a verdict approved by him. The plaintiff introduced no evidence tending to prove that the defendants made an oral or written agreement to form a partnership. He relies on isolated statements and the conduct of the parties to establish the partnership. The evidence upon which he relies is substantially as follows:

Plaintiff conducts a general merchandise business and installs plumbing and heating equipment in the area of Colonial Beach, Virginia. Charles A. Knox is the husband of Helen Knox and is engaged in the general contracting business in and around Colonial Beach. He has at different times conducted his business in the name of Charles A. Knox, Charles A. Knox Co., and Charles A. Knox, Inc. For the past several years the plaintiff has sold Knox plumbing and heating supplies and has installed for him plumbing and heating equipment in several buildings constructed by him. The debt upon which plaintiff bases this action is the balance due on the purchase prices of the various articles and the contract price for plumbing and heating charged on plaintiff's books to "Charlie Knox", or "Chas. Knox." Payments on these accounts were frequently made by checks drawn by Helen Knox on the Bank of Westmoreland, Colonial Beach, Virginia.

Cooper testified that though he had great difficulty in making collections upon the account and had repeatedly demanded payment of Charles A. Knox, he had never sent a bill to or demanded payment of Helen Knox, though he saw her frequently. He admitted that the

only time he had heard Helen Knox make any statement about her husband's business was one day in their home he was discussing with Knox the use of an Armstrong furnace in a certain building Knox was then constructing. Knox asked his wife to get the specifications for the building and upon examination it was found that the specifications called for a different make furnace. Thereupon, Mrs. Knox advised that before installing the Armstrong furnace they had better consult the owner, as "we have had enough trouble with installing other make furnaces than those specified."

The substance of the testimony of other witnesses for plaintiff is that the greater part of the payments made to Knox for his construction work was deposited in the Bank of Westmoreland to the credit of Helen Knox, out of which deposits she paid a greater part of the costs of construction. She was seen at one time on a building her husband was constructing at Bowling Green with a blue print in her hand showing a workman where and how to install the wiring.

William V. Carruthers testified that he went to Knox's home for the purpose of discussing a contract to erect a motel. Knox was not at home, so he discussed the proposition with his wife, and she told him "we will be glad to build the court." He filed with his testimony an advertisement in a local newspaper which read "Congratulations on your new, beautiful motel. Helen S. Knox, Designer; Chas. A. Knox, Inc., General Contractor; Phone Colonial Beach 3281." After his initial conversation with Mrs. Knox he made a contract for the construction of the motel with Knox, in which his wife did not join, and, thereafter, dealt entirely with him.

Helen Knox, called by the plaintiff as an adverse witness, testified that during the war she had worked at Dahlgren Navy Ordinance Proving Ground, where she had experience as a carpenter and learned to read blue prints; that she, by her own labor and employment of others, from her own earnings had reconstructed a very fine home at Colonial Beach. Her husband as partner of her father became financially involved and was in need of cash with which to pay his indebtedness and buy her father's interest in the partnership. She sold her house and permitted her husband to use the proceeds to pay his indebtedness and pay her father for his interest in the property. She did this on condition that her husband would have their present home, which was a part of the partnership assets, conveyed to her, which he did.

She also testified that prior to the execution of this deed her hus-

band had had accounts in several banks. His records were not properly kept. He was frequently overdrawn. At his request she agreed for him to deposit a part of the money paid him in his business to her bank account with the understanding that she would keep his books, check on the account as directed by him for the payment of material, labor and other business expenses. She was authorized to check on the same account for household expenses, but before any unusual expenditure for herself or her household was made she was required to obtain his approval. In addition to the household expense, she paid out of this account $137.00 a month for a Chrysler car, which she bought for her own use, and also paid installments on a debt secured by a deed of trust on their home. She had no voice or control in the conduct of her husband's business. She did not share in the profit or loss. She received no payment for what she did. She had no separate income. She was entirely dependent upon her husband for support of herself and her family.

While her husband was constructing the motel for William V. Carruthers she heard them discussing parts of the plans with which the owner seemed dissatisfied. She suggested certain changes with which the owner seemed pleased and asked her to redesign the unsatisfactory parts of the plans, for which he paid her $50.00.

One Tolson had moved to Colonial Beach for his health and was boarding with Knox. Sometime before the wiring incident, his health had improved to such an extent that he desired to go to work. Helen Knox suggested that he get a job with her husband, which he did. He was paid by the hour, but was unable to read blue prints and did not know exactly how to do the wiring. She understood the blue prints and told him just how to run the wires in compliance therewith.

Charles A. Knox testified that he had been in business as a building contractor for many years; that he once had his business incorporated, but the corporation was dissolved in 1950, although he still used billheads left over from the supply printed for the corporation; that several years ago his wife agreed to keep all his books and records; that he closed out his bank accounts, arranged with his wife to have much of his business collections deposited in her name and for her to pay such bills from these deposits as were authorized by him; that at the time this arrangement was made there were several outstanding judgments against him, all of which have been paid; that his wife has no financial interest in his business; and that it was never

suggested to him that she was his partner until the institution of this action.

The open accounts upon which this action is based bear various dates from September, 1952, to May, 1954. During this period Charles A. Knox entered written contracts with three separate owners for the erection of three buildings. Each of these contracts is signed by the owner and Charles A. Knox, general contractor. None of them was signed by Helen Knox. In addition, several liability insurance policies whereby Charles A. Knox was insured as a general contractor were introduced in evidence. Helen Knox was not insured in any of them, although her name did appear on one, but not as a partner interested in the faithful performance of the duties of the general contractor.

The courts have been unable to formulate an exclusive test or general rule by which to determine in every case the question of partnership as to third parties. No one factor or circumstance can be taken as a conclusive criterion, but each case must be determined upon its own particular facts and surrounding circumstances. 68 C. J. S., Partnership, Sec. 30, p. 450.

"It is generally agreed that in order to constitute a partnership as to third persons, it is essential that the parties charged as partners have a community interest as common owners of the business which constitutes the joint undertaking." 68 C. J. S., Partnership, Sec. 29(a), p. 446. This community of interest must be of such nature as makes each member a co-principal and an agent of all members, with joint authority or right in the administration, control, disposal of the business or its property. 68 C. J. S., Partnership, Sec. 28(b), p. 446.

The mere fact that a greater part of the receipts Charles A. Knox collected from the conduct of his business was deposited in a bank in the name of Helen Knox and used to pay the expense of his operation and the expense of maintaining his wife and family is not sufficient to establish a partnership between husband and wife.

Helen Knox's isolated use of the pronoun "we" two or three times in discussing building plans and specifications with her husband's business associates does not tend to show that she had a voice in the management and control of her husband's business. Indeed, her statements and conduct merely indicate a devoted and faithful wife's interest in the successful operation of her husband's business, but they do not prove the existence of a business partnership.

Partnership relations are formed by a contract expressed or implied between two or more parties for joining together their money, goods, labor, or skill in a venture or business, upon an agreement to divide the gains or losses between them. *Brown's Ex'or* v. *Higginbotham*, 5 Leigh (32 Va.) 583.

■ The paintiff contends that the jury under the court's instructions could have found that defendants were estopped to deny the existence of a partnership. There is not a scintilla of evidence tending to show that Helen Knox represented to plaintiff or held herself out to him or anyone else as a partner in her husband's business. The merchandise was sold and charged to Charles Knox. The plumbing equipment was installed in houses Charles A. Knox and not his wife was under contractual obligation to complete. Plaintiff was a frequent visitor in the home of defendants. He never inquired about their business relations, never sent Helen Knox a bill or demanded payment of her for any part of her husband's debts.

In order for a third person to be held liable as a partner on the ground of estoppel, two things must be proven: (1) the act of holding out must have been done either by him or with his consent; and (2) such holding out must have been known to the party seeking to avail himself of it and credit given on the faith of it. *Hobbs* v. *Bank*, 147 Va. 802, 841, 128 S. E. 46.

We agree with the conclusion of the trial court that the evidence is insufficient to support the verdict finding Helen Knox a partner in her husband's business. The judgment is

*Affirmed.*