# Richmond

JOHN R. CULLINGWORTH v. LESLIE POLLARD AND RAY POLLARD, TRAD-
ING AS BEAVERDAM MOTOR COMPANY, ET AL.

January 18, 1960.

Record No. 5008.

Present, All the Justices.

The opinion states the case.

*G. Kenneth Miller*, for the plaintiff in error.

*Harry P. Anderson, Jr. (Satterfield, Anderson & Beazley*, on brief),
for the defendants in error.

SNEAD, J., delivered the opinion of the court.

The critical question in this appeal is whether the evidence is sufficient to sustain a finding by the jury that John R. Cullingworth, appellant, was a partner of Samuel R. Hubbard, Jr. in the business conducted under the name of Hubbard Used Cars.

On November 8, 1957, Leslie Pollard and Ray Pollard, trading as Beaverdam Motor Co., appellees, filed a motion for judgment against Samuel R. Hubbard, Jr. and John R. Cullingworth, individually and trading as Hubbard Used Cars, for the sum of $3,489.33, being the balance due on two automobiles which Hubbard purchased from Beaverdam Motor Co. on or about August 15, 1957. The motion alleged that Hubbard and Cullingworth in August, 1956, "associated themselves together" for the purpose of transacting the general business of a used car dealer and as such did, in fact, conduct the business as a partnership, which terminated about October 24, 1957. Cullingworth filed his grounds of defense, in which, among other things, he denied a partnership ever existed between him and Hubbard, or that he was indebted for the amount claimed to be due or any part thereof. Hubbard filed no pleadings. A trial was had beginning on May 5, 1958. Motions of Cullingworth to strike both at the conclusion of plaintiff's evidence and after all the evidence was adduced were overruled. On motion of plaintiffs, summary judgment was entered against defendant Hubbard for $3,489.33. He did not appeal and the judgment against him is final. The court submitted to the jury the issue between plaintiffs and defendant Cullingworth. A verdict was returned in favor of plaintiffs in the amount sued for and defendant Cullingworth's motion to set it aside was later overruled.

Appellant contends his connection with the business was limited to that of financing some automobiles for Hubbard. On the other hand appellees maintain that appellant and Hubbard were partners by express oral agreement as well as by implied agreement on account of appellant's actions in the business.

Cullingworth operated a used car business in Richmond under the name of Richmond Auto Mart. He sold the business to Phillip H. Poppas in 1954. Poppas employed Hubbard as his manager. Although Hubbard had known Cullingworth prior to this connection, it was there they became well acquainted. According to Hubbard, he was not "getting along so good" and Poppas discontinued his salary. He stated that thereafter Cullingworth bought some automobiles for him to sell on the lot and he gave Cullingworth part of the profits and the reserve allowed dealers by financing institutions was paid to

Poppas. He decided to open his "own" lot and asked Cullingworth if he would "back" him and Cullingworth replied that he would provided he secured a lot, completed it for the conduct of business, and would sell the cars promptly.

Later in his testimony Hubbard said he talked with Cullingworth about "coming in" with him as a partner, or either buying out Poppas. After he received Cullingworth's approval to start the business he rented a lot on West Broad street in his individual name from Joseph L. Gillio. He likewise entered into contracts for electric and water services. Liability insurance policies were issued in his name. On July 31, 1956, he filed an application under oath with the Division of Motor Vehicles for a license to operate a used car business. In it he stated the business was not owned by a partnership and that he was the owner. The license was granted in the name of Samuel R. Hubbard, Jr., trading as Hubbard Used Cars. The same statements appeared in his sworn application for a renewal license submitted on May 31, 1957. This license was posted in a conspicuous place on the wall of his office on the lot. He secured a Richmond license to do business in the name of Samuel R. Hubbard, trading as Hubbard Used Cars. Hubbard paid all expenses in setting up the business. He opened bank accounts, signed all checks as "owner", paid all bills, determined when they were to be paid and hired and discharged all employees. Cullingworth had no such authority.

Hubbard testified that Cullingworth went to auctions with him and paid for cars purchased; that if Cullingworth did not agree on a vehicle it would not be purchased because he (Hubbard) did not have the money; that the titles to cars purchased were put in the name of Samuel R. Hubbard, Jr., trading as Hubbard Used Cars, and that either liens were inserted on the titles in favor of Cullingworth for the purchase price or he held the titles as security until the cars were sold. He said he and Cullingworth agreed to and did split the profit, if any, on each car financed by Cullingworth and the 20% reserve allowed the dealer by banks who financed cars for purchasers was retained by him for expenses. He did not state who would bear the loss if such occurred.

When operations began on August 1, 1956, Hubbard had two or three units belonging to him on the lot. Other cars were placed there financed by Cullingworth. About two months later the Central National Bank placed vehicles valued at approximately $9,000 there to be sold. After about six months of operations two of Hubbard's

checks drawn in favor of Cullingworth were returned by the Bank for insufficient funds and Cullingworth discontinued advancing money for the purchase of automobiles. Hubbard then sought financial assistance from other sources. He arranged with Universal C. I. T. Credit Corporation, upon the guaranty of E. E. Harrison, Jr., for a floor plan line of credit in the sum of $20,000. A number of individuals also financed cars for him whom he agreed to pay $100 on each unit. Cullingworth received no part of the profits from vehicles sold other than those financed by him.

Plaintiffs introduced in evidence an exhibit consisting of a number of Cullingworth's checks, marked paid, in amounts ranging from $90 to $9,235, which were issued between August 3, 1956 and December 12, 1956. The payees include Hubbard, Hubbard Used Cars, Windsor Auto Auction and Howett Motors. Some of the checks bear a notation concerning a particular car or cars and others do not. Hubbard identified the checks and said some of the funds "went into the business."

Hubbard further testified that Cullingworth stayed at the lot about half the time during business hours; that he would answer telephone calls on occasions and sold several automobiles. He said Cullingworth was his partner and that the partnership was terminated at the end of six months operations, which was before Hubbard purchased the cars from appellees. He admitted that he had been convicted of a felony involving moral turpitude in connection with the business.

Leslie Pollard, one of the appellees, stated that all of his negotiations concerning the sale of the two cars to Hubbard Used Cars were had with Hubbard, and that the balance due on the purchase was $3,-489.33, which amount was not disputed.

Joseph H. Wilkins, Jr., a certified public accountant, examined the books of Hubbard Used Cars in the clerk's office before trial at the request of appellees and prepared three schedules which were introduced in evidence. Schedule No. 1 was taken from General Ledger Account No. 43, which is headed "Floor Plan" of Cullingworth and covers the period from August 1, 1956 to October 31, 1957. It lists amounts with dates charged to Cullingworth totalling the sum of $42,919 and the amounts with dates credited to him totalling the sum of $43,597. Schedule No. 2 taken from the Cash Receipts and Disbursement Book for the same period shows services $100, cash $24,190 and automobiles $19,307 or a total of $43,597 credited to Cullingworth. Schedule No. 3 lists from the same book

and for the same period of time amounts with dates paid Cullingworth totalling $49,879. Wilkins admitted he had not followed the usual procedure of determining whether cash was received by checking bank accounts to see if there were deposits equal to the alleged cash received. The following questions and answers occurred while Wilkins was cross-examined:

"Q. So you don't know if there was any cash actually paid into the company which was deposited in the bank account as cash or not, do you?

"A. I cannot tie down exact figures.

"Q. It could have been, sir, couldn't it, that automobiles were purchased, and that the cash was used, financed by Mr. Cullingworth for the purchase of automobiles, and that it was recorded as cash, when in fact the only thing received by the Hubbard Used Cars was an automobile with a lien on it, isn't that correct, sir?

"A. I cannot say whether it is correct, with a lien on it, or not. I call attention to the second item of receipts, namely $9,235. That was recorded as cash. But there is a check drawn by John R. Cullingworth purchasing an automobile, although it was recorded as cash, you see, sir. Now whether it came into the business or not, I am not saying.

"I am saying it is recorded as cash, and it was made payable to the Windsor Auto Auction. And the indication as recorded on the books for those automobiles came through. But I am not saying it was any lien recorded by anyone.

"Q. I think I understand you on that, sir. You don't know if there was a lien on those cars or not, do you, sir?

"A. I do not.

"Q. So the item which you spoke of, this $9,000 item, sir, you might refer to it specifically as $9,235, sir, you found an inventory coming in of cars which match that, isn't that correct, sir?

"A. I found a like amount of a check drawn by John R. Cullingworth to the Windsor Auto Auction.

"Q. And you did not find any deposit slip that any such money actually came into the Hubbard Used Cars at all, did you, sir?

"A. It was indicated in that particular entry that those cars were bought directly, and the money did not come in.

"Q. But still it was listed in the cash account, even though it was not actually handled that way, sir?

"A. That's right."

Wilkins further stated that the total sales of automobiles from August 9, 1956 to October 31, 1957, amounted to approximately $75,-000, and he found no capital account set up in the books for Cullingworth, but there was one for Hubbard.

Raymond L. Malloy, an accountant who was in the employ of the City of Richmond and who did outside bookkeeping in his spare time, stated that he was engaged by Hubbard several months after August 1, 1956, to set up books for Hubbard Used Cars, which necessitated compiling information from that date; that they were set up on the basis of a sole proprietorship; that he did bookkeeping work for him until the business closed, which was in the fall of 1957; that he looked to Hubbard for the payment of his salary and for direction of work to be done, and that he considered Hubbard the sole owner of the business. He further testified that at Hubbard's direction he filed the 1956 tax returns which showed him to be the sole proprietor of the business; that the records were inadequately kept by Hubbard, dates were frequently an estimate; that it was extremely difficult for him to post the transactions, and that he did not consider the books completely accurate.

He was asked on cross-examination; "As I understand it, you recorded the transactions to the best of your ability based upon the information you had at hand? Isn't that true?" He replied: "I don't think I got across to you I was trying to state that as far as I was concerned there was an asset there. Whether it was cash or automobiles purchased, or whether the cash had come into the business or the automobiles had come into the business, that didn't make much difference to me. The end result was getting automobiles on the books, which I had found through one source or another had been purchased."

A check for $1,900, dated August 22, 1956, was drawn in favor of Cullingworth and an entry was made on the same day in the general ledger account charging Cullingworth for $1,800. When Malloy was asked how the diffeernce of $100 was entered, he replied: "Interest." There were other similar entries. He stated there was only one capital account in the books and that was for Hubbard, and that the net profit of $4,289.56 for 1956 was distributed to Hubbard.

Cullingworth, 67 years of age, testified he retired from the used car business in 1954; that his education was very limited; that he never heard of a partnership arrangement with Hubbard until he

was served with process in the present action, and that he never contributed anything to the capital of Hubbard Used Cars other than financing cars upon which he secured liens or held the titles as security. He stated that he did attend auctions with Hubbard; that he did indicate the amount he would lend on vehicles if purchased; that the reason he paid for cars purchased was because the auctioneer would not accept Hubbard's checks, and that he did not share in the control or profits of the business.

Section 50-6, 1958 Replacement Vol. 7, Code 1950, defines a partnership and it provides in part:

"(1) A partnership is an association of two or more persons to carry on as co-owners a business for profit."

Section 50-7[1] sets forth the rules to be applied in determining whether a partnership exists. One of them reads: "(1) Except as provided by § 50-16 persons who are not partners as to each other are not partners as to third persons." Thus if Hubbard and Cullingworth were not partners as to each other they could not be partners as to appellees unless the principle of estoppel is applicable under § 50-16. There is no evidence in the record to invoke this principle.

In *Kennedy* v. *Mullins*, 155 Va. 166, 174, 154 S. E. 568, we quoted from 20 R. C. L. Partnership, § 36, pp. 831, 832, wherein it is said:

"The particular test as to the existence of the partnership relation which is most widely accepted to-day and which is applicable especial-

---

[1] Sec. 50-7. *"Determining existence of partnership.*—In determining whether a partnership exists, these rules shall apply:

(1) Except as provided by § 50-16 persons who are not partners as to each other are not partners as to third persons.

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business; but no such inference shall be drawn if such profits were received in payment:

(a) As a debt by installments or otherwise;

(b) As wages of an employee or rent to a landlord;

(c) As an annuity to a widow or representative of a deceased partner;

(d) As interest on a loan, though the amount of payment vary with the profits of the business;

(e) As the consideration for the sale of the good will of a business or other property by installments or otherwise."

ly as between the parties themselves irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of the members. This intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction. * * *."

'In *Cooper* v. *Knox*, 197 Va. 602, 606, 90 S. E. 2d 844, it is stated:

"The courts have been unable to formulate an exclusive test or general rule by which to determine in every case the question of partnership as to third parties. No one factor or circumstance can be taken as a conclusive criterion, but each case must be determined upon its own particular facts and surrounding circumstances. 68 C. J. S., Partnership, Sec. 30, p. 450.

" 'It is generally agreed that in order to constitute a partnership as to third persons, it is essential that the parties charged as partners have a community interest as common owners of the business which constitutes the joint undertaking.' 68 C. J. S., Partnership, Sec. 29(a), p. 446. This community of interest must be of such nature as makes each member a co-principal and an agent of all members, with joint authority or right in the administration, control, disposal of the business or its property. 68 C. J. S., Partnership, Sec. 28'(b), p. 446." See also 40 Am. Jur., Partnership, § 41, p. 154.

We observe Hubbard rented the lot and purchased liability insurance as an individual. In his application for a license filed with the Division of Motor Vehicles on July 31, 1956, he stated under oath that the business was not a partnership and that he was its sole owner. On May 31, 1957, he stated in his application for a renewal of the license, which was also acknowledged, that he was the sole owner of the business. The 1956 tax returns were filed as a sole proprietorship. He paid all expenses for establishing the business. He opened the bank accounts and signed checks as "owner". He had complete charge of the books, hired and fired employees. The books were set up by his bookkeeper as a sole proprietorship and he received the net profits. No capital account was set up for Cullingworth. Certainly these acts are inconsistent with an intent to become partners or the existence of such a relationship. Cullingworth's consent was not necessary to dispose of the business and he had no connection with it except to approve cars to be financed by him. For that service he received

one-half of the profits, if any. He did not receive any part of the profits from the sale of automobiles financed by others. He paid no part of the expense of the business. The 20% reserve allowed by the banks on cars they financed for purchasers was retained by Hubbard for that purpose.

Viewing the record in the light most favorable to appellees, we find that as a matter of law the evidence is insufficient to hold Cullingworth was a partner of Hubbard, either by express contract or implied. The essential element of "co-ownership" of the business as contemplated by § 50-6, *supra,* is lacking. Cullingworth's status was that of a creditor. The court below erred in overruling appellant's motion to strike at the conclusion of all the evidence.

The judgment appealed from is reversed and final judgment is here entered in favor of appellant.

*Reversed and final judgment.*