Hooper Body Corporation v. Commissioner. Hooper Valve and Engineering Corporation v. Commissioner.
Hooper Body Corp. v. Commissioner
Docket Nos. 57517, 57518.
United States Tax Court
T.C. Memo 1960-168; 1960 Tax Ct. Memo LEXIS 121; 19 T.C.M. (CCH) 906; T.C.M. (RIA) 60168; August 22, 1960
F. O. Blechman, Esq., for the petitioners. Ferd J. Lotz, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in income tax against the petitioners as follows: Docket
Fiscal Year Ended
No.
Petitioner
September 30
Amount
57517
Hooper Body Corporation
1951
$17,698.28
1952
563.28
57518
Hooper Valve and Engineering Corporation
1951
2,639.66
1952
242.22 The only issue for decision is the determination of petitioners' basis of the assets transferred to each of them by Frank B. Hooper. Findings of Fact The petitioner in Docket No. 57517 is the Hooper Body Corporation, hereinafter sometimes referred to as Hooper Body, a Virginia corporation organized on August 11, 1950. The petitioner *122 in Docket No. 57518 is the Hooper Valve and Engineering Corporation, hereinafter sometimes referred to as Hooper Valve, a Virginia corporation organized on August 11, 1950. Both petitioners filed corporate income tax returns for the fiscal years ended September 30, 1951, and September 30, 1952, with the district director of internal revenue at Richmond, Virginia. Frank B. Hooper, hereinafter sometimes referred to as Hooper, and George T. Hardy, hereinafter sometimes referred to as Hardy, were for 50 years prior to June 8, 1949, associated in various business enterprises. Among these enterprises were the Warwick Machine Company, hereinafter sometimes referred to as Warwick, and the Mason Manufacturing Company, hereinafter sometimes referred to as Mason. Warwick was organized as a Virginia corporation in 1900. On June 8, 1949, Hardy and Hooper each held 50 shares of the common stock of Warwick, the stock constituting all of the outstanding capital stock of the corporation. At that time, Hardy was president and Hooper secretary-treasurer of the corporation. Mason was organized as a Virginia corporation in 1923. On June 8, 1949, Hardy and Cooper each held 158 shares of stock of *123 Mason, said stock constituting 88 per cent of the outstanding capital stock of the corporation. At that time, Hardy was president and Hooper secretary-treasurer of the corporation. On June 8, 1949, Hardy filed a bill of complaint in the chancery part of the corporation court for the city of Newport News, Virginia. In this bill of complaint, after alleging his business association with Hooper including his ownership of stock inWarwick and Mason, Hardy alleged the following: "(5) That for over three years the disagreements between your complainant, George T. Hardy, and the defendant, Frank B. Hooper, have been such that it has been impossible for them to hold any meetings of the Boards of Directors of said corporations, they have been unable to consult, collaborate or otherwise amicably determine jointly any of the hundreds of questions arising in the daily conduct of affairs and policies of each of said corporations; that they have communicated each with the other by innumerable written memorandums and letters, that each of said parties have acted independently on behalf of each corporation and without proper corporate authority, often over current and subsequent protest of the *124 other. * * *
"(14) That your complainant is of the opinion that each of said corporations is now solvent and by proper and orderly liquidation could pay all their respective debts, including the tax liens due to the United States of America, and including the debts due your complainant, George T. Hardy, but the wrongful acts of the defendant, Frank B. Hooper, and the continued mismanagement by Frank B. Hooper, and the continued inactivity of the corporations, threatens the very existence of each of said corporations and threatens now to bring great and irreparable loss and damage to each corporation and to your complainant. "(15) That in an effort to bring order out of the existing chaos, your complainant has offered to Frank B. Hooper to exchange some of their respective interests and has offered to buy the interest of Frank B. Hooper in said corporations and has offered to sell his own interest in said corporations to Frank B. Hooper, but the said Frank B. Hooper has refused to buy, sell or exchange, and the existing stalemate can only bring great and irreparable damage and loss to all concerned. * * *
"(17) That your complainant is informed that under the law in *125 such cases made and provided, he is entitled to seek relief in this Court, to have a dissolution of his joint affairs, undertakings and interests with Frank B. Hooper, to have receiver or receivers appointed to take over and preserve the assets of each corporation, to have an accounting from Frank B. Hooper, and an accounting from each of said corporations to him, to put an end to the mismanagement and stalemate now existing in the affairs of each corporation, to have said corporations liquidated in an orderly fashion so as to pay off all debts, including the tax liens of the United States and the debts due by said corporations to your complainant, and so as to prevent insolvency of said corporations, and to have an injunction and restraining order against said Frank B. Hooper to prevent his further removal or expenditure of corporate funds or property and to prevent him from disposing of his own property, real and personal, pending this suit and the settlement of his accounts with the Warwick Machine Company." Upon these and other allegations, Hardy prayed that Hooper, Warwick, Mason and others be made parties defendant to the bill; that dissolution be accomplished of his joint *126 affairs, undertakings and interests with Hooper; that a receiver or receivers be appointed to take over and preserve the assets of each of said corporations; that accountings be had of Hooper and each corporation and the debts of each determined together with the respective priorities of said debts; that orderly liquidation of each corporation be had and proper sale of assets made by the said receivers under the direction of the court; that Hooper be removed from the management of each of said corporations and be enjoined and restrained from making sale or other disposition of his own property and that of the said corporations pending the suit; that all other accounts and orders which are proper may be taken and made in this cause; and that he might have such other, further and general relief as to equity and good conscience might seem meet. In an order of the corporation court for the city of Newport News dated June 21, 1949, it was stated in part as follows: "And it appearing to the Court that George T. Hardy and Frank B. Hooper, as the officers and principal stockholders in each of said corporations, are in such disagreement that the affairs of each of said corporations are *127 at a stalemate so that they cannot be managed properly and in accordance with the law; and "It appearing further to the Court that pending further hearings and the determination of the issues presented by the bill of complaint, it is in the best interest of the said parties and each of the said corporations that the assets of said corporations be preserved for the benefit of their respective creditors and the said parties, "It is ADJUDGED, ORDERED and DECREED that Richard Newman, David A. Butler, & H. V. Hooper be and they are hereby appointed receivers for the Warwick Machine Company, Peninsula Ice Service, Incorporated and for the Mason Manufacturing Company, Incorporated, and the said receivers are hereby authorized and directed to take possession of the physical assets, books and records of each of said corporations and to inventory the same, and to execute and perform on behalf of each of said corporations their respective contracts now existing, and the said receivers are hereby authorized and directed to take over and handle the bank accounts of each of said corporations and to make such disbursements as may be necessary in the performance of the contracts now existing and *128 in the preservation of the said property, and the said receivers are directed to make report to this Court of their activities and findings hereunder. * * *
"And the Court doth ADJUDGE, ORDER and DECREE that Frank B. Hooper and George T. Hardy be and they are hereby enjoined and restrained from interfering with the said receivers in the discharge of their duties as above set forth, and from acting for or on behalf of any of said corporations pending further order of this Court, and from disposing of any of their stock in said corporations and any real estate owned by them jointly, pending the further order of this Court." After taking possession of the physical assets, books and records, the receivers caused an inventory and statement of affairs of Warwick and Mason to be prepared. Two of the receivers, namely, Richard Newman and David A. Butler, estimated the net worth of Warwick at June 21, 1949, to be $82,024.07, and the net worth of Mason on that day to be $75,997.23. At the same time that the above report was submitted to the court, which was shortly after August 2, 1949, H. V. Hooper submitted a minority report in which he estimated the net worth of Warwick on June 21, 1949, to *129 be $54,543.82 and the net worth of Mason on that date to be $47,157.66. Both majority and minority receivers' reports included the land and buildings of Warwick in the schedule of assets of that corporation. The majority report contained, however, a statement at the side of the receivers' estimates of the value of the land and buildings which read: "Appears to be titled in the name of Hardy and Hooper." The minority report contained a note below the schedule of assets and liabilities of the corporation which read as follows: "The land and buildings listed above are titled in the name of Hardy & Hooper and therefore should not be listed as an asset of the company. However, in view of the close relation between Hardy & Hooper and the company, it is assumed that this technicality is not important." In an order issued on or about September 12, 1949, the corporation court decreed that Hooper and Hardy each was to be given until the 30th day of September 1949 to submit to the court through its receivers an offer to buy the physical or other assets, or any portion thereof, owned by Warwick, Mason or Peninsula Ice Service, Incorporated, and that if no such offer be submitted by Hooper *130 or Hardy by that day, then the receivers should undertake an orderly liquidation and sale of the assets of each of the said three corporations, that the receivers should undertake to obtain private offers for all of any part of the assets of the said corporations until December 15, 1949, and that all assets of the said corporations which have not been sold by December 15, 1949, should then be sold by the receivers at public auction. Certain assets of Peninsula Ice Service, Incorporated, by agreement between the corporation court, Hooper, and Hardy were sold to the Newport News Distilled Ice Company on April 1, 1950. On April 1, 1950, an auction was held in the chambers of Judge Herbert G. Smith of the corporation court to permit Hardy and Hooper to bid for all or a part of the assets of Warwick and Mason. At this auction, Hooper bid $25,000 for the land, buildings, equipment and inventory of Warwick and $57,500 for the land, buildings, equipment and inventory of Mason. As his bid was the higher of the two bids submitted, these assets were awarded to Hooper. Pursuant to a verbal order of the corporation court issued on April 19, 1950, Hooper on May 1, 1950, deposited with said *131 court the sum of $10,000 as earnest money, $7,000 of which was allotted to the account of Mason and $3,000 of which was allotted to the account of Warwick. In an order issued on or about August 15, 1950, the corporation court decreed that Hooper pay to the receivers on or before September 1, 1950, the sum of $72,500, being the balance due on his offers for the physical assets of Mason and Warwick, and that he pay to the receivers interest at the rate of four per cent per annum on the sum of $72,500 from May 1, 1950, until the date of settlement. Hooper thereafter paid the balance due. The sum of $57,500 was paid by Hooper to the receivers of Mason who used this money, together with cash on hand in the corporation and cash realized from its other assets, to satisfy the liabilities and to pay expenses of Mason. The liabilities satisfied included a note and accounts payable to Hardy and accounts payable to Hooper. The sum of $25,000 was paid by Hooper to the receivers of Warwick who used this money, together with cash on hand in the corporation and cash realized from its other assets, to satisfy some of the liabilities of Warwick. However, certain taxes assessed against Warwick *132 remained unpaid for lack of funds or other assets with which to make payment. Shortly thereafter, on September 6, 1950, Hardy and Hooper entered into an agreement which provided that whereas the parties had theretofore jointly owned certain real estate and had for many years been jointly interested in the corporations known as Warwick and Mason; and whereas Hardy instituted suit against Hooper and the said corporations as a result of which receivers were named for each of said corporations; and whereas there had been many items of dispute between the parties, the parties therein reached agreement to settle without further controversy the items of dispute so far as could be done. In consideration of the premises, mutual covenants, agreements and undertakings contained within the aforesaid agreement, the parties therein agreed that neither of them would thereafter controvert the correctness of their accounts as set forth on the books of the said corporations; nor would either contend for preferential payment of any of said accounts but that all sums remaining in any one of said corporations should be construed as being for the benefit of both parties and should be equally divided between *133 them, subject only to an agreed preferential payment of $7,000 to Hardy. The parties further agreed that certain assets held by each of them would no longer be claimed to be the property of the corporations, and that certain other charges for the use of premises and machinery in the hands of the receivers should not be contested. Finally, the parties agreed to promptly partition all real estate jointly held by them and to do all things possible to expedite the conclusion of the pending suit in the corporation court. An order of the corporation court entered on or about September 30, 1950, granted leave to the receivers to file their report and petition. Following recitation of the below-stated paragraph, the court entered certain orders: "UPON CONSIDERATION WHEREOF, it appearing to the Court that payment has been made to the said Receivers of the sum of FIFTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($57,500.00) for all of the physical assets of Mason Manufacturing Company, Incorporated, pursuant to an offer made on behalf of Hooper Body Corporation on the 19th day of April, 1950; and it also appearing to the Court that the payment of the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) *134 has been made to the said Receivers for all of the physical assets of Warwick Machine Company, made pursuant to an offer made to the Receivers on the 19th day of April, 1950, on behalf of Hooper Valve and Engineering Corporation; and it further appearing to the Court that the injunction decreed by order of this Court on June 21, 1949, should be dissolved; and it further appearing to the Court that for the purpose of removing any cloud upon the title to the said properties resulting from the Receivership involved in this suit, that the said Richard Newman, David A. Butler, and H. V. Hooper Receivers, should join in the conveyance from Mason Manufacturing Company, Incorporated to Hooper Body Corporation and should also join in the conveyance from Warwick Machine Company to Hooper Valve and Engineering Corporation;" These orders were as follows: "The Court doth therefore ADJUDGE, ORDER and DECREE: "1. That the said Mason Manufacturing Company, Incorporated execute and cause to be acknoweldged and delivered a deed conveying to Hooper Body Corporation for the sum of FIFTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($57,500.00) with general warranty of title all of its physical assets more *135 particularly described as follows, to-wit: "All those certain lots, pieces or parcels of land, with all improvements thereon and appurtenances thereunto belonging, situate and being in the City of Newport News, Virginia, and being known and designated as * * * [following was a description of the land]. "Being the same property conveyed to Mason Manufacturing Company, Inc., from Mason Body Company, Inc., by deed dated December 15, 1923, and recorded in the aforesaid Clerk's office; on January 9, 1924, in Deed Book 96, page 5. "Together with all and signular the buildings and improvements thereon, rights, privileges, tenements, hereditaments, easements and appurtenances, unto the said land belonging or in anywise appertaining, and also all machinery, equipment, fixtures, stock-in-trade, merchandise, lumber, truck bodies, and all other tangible physical property belonging to the party of the first part, located on the real estate above described. "2. That the said Warwick Machine Company execute and cause to be acknowledged and delivered a deed conveying to Hooper Valve and Engineering Corporation for the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) with general warranty *136 of title, all of its physicial assets more particularly described as follows: 'All that certain lot, piece or parcel of land, with all improvements thereon and appurtenances thereunto belonging, situate and being in the City of Newport News, Virginia, and being bounded and described as follows: * * *' [There followed a description of the land.] "3. That the said Richard Newman, David A. Butler, and H. V. Hooper, Receivers and also Geroge T. Hardy and Frank B. Hooper, one of the defendants herein, join in said deeds conveying and releasing with special warranty of title any interest that they as Receivers may have in said properties." The deeds so ordered were made on the 30th day of September 1950. The first, by and between Mason Manufacturing Company, Incorporated, the receivers, Hardy, Hooper and Hooper Body Corporation, provided that for and in consideration of the sum of $57,500 cash in hand paid to Mason, Mason granted, bargained, sold and conveyed with general warranty of title unto Hooper Body Corporation certain described real property together with the buildings and improvements thereon and all machinery, equipment, fixtures, stock in trade, merchandise, lumber, *137 truck bodies and all other tangible physical property belonging to Mason located on the real property therein described. The second, by and between Warwick Machine Company, the receivers, Hardy, Hooper and Hooper Valve and Engineering Corporation provided that for and in consideration of the sum of $25,000 cash in hand paid to Warwick, Warwick granted, bargained, sold, and conveyed with general warranty of title unto Hooper Valve and Engineering Corporation certain described real property with the buildings and improvements thereon and all machinery, equipment, fixtures, stock in trade, merchandise, parts and all other tangible physical property belonging to Warwick located on the real property therein described. The real property and buildings described in the deed by and between Warwick, the receivers, Hardy, Hooper, and Hooper Valve and Engineering Corporation, did not stand in the name of Warwick but in the names of Hardy and Hooper. In an order entered on or about June 26, 1951, the corporation court, being of opinion that the affairs of Warwick and Mason could then be liquidated, directed the receivers to collect the receivables listed in their report and from the funds in *138 hand to pay certain debts of Mason and Warwick and certain expenses incurred by these corporations in connection with the receivership. The receivers' final report was filed with the court on or about July 2, 1953. The receivers reported that deeds and bills of sale had been executed by the respective corporations and by them transferring and conveying all of the property, both real and personal, involved in the receivership, all under proper order of the court; that no assets or properties remained in the hands of the receivers; that all taxes assessed against Mason were paid, but only those taxes assessed against Warwick had been paid where funds were available to the receivers to pay the same, and that there remained nothing further for the receivers to do in respect of this cause. In addition to these statements, the receivers set forth in an addendum to their report detailed statements of the cash received and disbursed by them on behalf of the corporations. A summary of these detailed statements appears below: MASON MANUFACTURING COMPANY
Receipts
PROCEEDS FROM SALE OF LAND, BUILDINGS, MACHINERY, EQUIP-
MENT AND INVENTORY
$ 57,500.00
Cash - Beginning of Receivership
325.42
Proceeds from Sale of U.S. Treasury Bonds
20,090.00
Collection of Accounts Receivable in Existence at Beginning of Receivership
5,058.57
Income from Sales During Receivership
148,903.83
Other Income and Miscellaneous Receipts
5,728.64
$237,606.46
Disbursements
Payment of Liabilities Existing at Beginning of Receivership: Trade Creditors
$ 9,746.82
Taxes
17,932.93
Notes Payable
12,500.00
NOTE PAYABLE - HARDY
151.87
ACCOUNT PAYABLE - HARDY
15,286.97
ACCOUNT PAYABLE - HOOPER
15,131.60
Business and Miscellaneous Expenses
166,856.27
$237,606.46
Balance June 20, 1953
NONE
WARWICK MACHINE COMPANY
Receipts
PROCEEDS FROM SALE OF LAND, BUILDING, EQUIPMENT AND IN-
VENTORY
$ 25,000.00
Cash - Beginning of Receivership
171.45
Collection of Accounts Receivable in Existence at Beginning of Receivership
26,755.93
Income from Sales and Rent during Receivership
1,822.63
Other Income and Miscellaneous Receipts
2,522.65
$ 56,272.66
Disbursements
Payment of Trade Liabilities and Taxes
$ 41,272.49
Business and Miscellaneous Expenses
15,000.17
$ 56,272.66
Balance June 20, 1953
NONE
*139 Hooper and Hardy were not partners in respect of their ownership of the stock of Mason and Warwick. Ownership of the real property included in the schedules of assets of Warwick prepared by the receivers, which real property stood in the names of Hardy and Hooper, was in Warwick. This real property was transferred with the equipment and inventory of Warwick for a consideration of $25,000 paid to that corporation. The suit brought by Hardy in the corporation court of the City of Newport News was a proceeding for, among other things, the dissolution of his joint affairs, undertakings and interests with Hooper, to have an accounting from Hooper and from each of the several corporations they were jointly interested in, and to put an end to the mismanagement and stalemate existing in the affairs of each corporation. Hooper was not a mortgage creditor of either Mason or Warwick. The suit brought by Hardy was not in the nature of a foreclosure action. Opinion The petitioners and the respondent are in agreement that the basis of the assets in the hands of petitioners is the same as it was in the hands of Hooper. The parties are not in agreement, however, as to what that basis was *140 in the hands of Hooper. The disagreement between petitioners and respondent is predicated on differing analyses of the transaction in which Hooper acquired the assets. Petitioners apparently contend that a partnership existed between Hardy and Hooper; that this partnership held the stock of Mason and Warwick; that Hooper bought out Hardy's interest in this partnership; that the partnership obtained the assets in issue for the stock of Mason and Warwick; that Hooper acquired the assets in issue upon a dissolution of the partnership; and that his basis for these assets, therefore, was his basis for his partnership interest plus his cost in acquiring Hardy's interest in the alleged partnership. An alternative contention of petitioners is that the action brought by Hardy was a foreclosure proceeding; that Hooper acquired the assets by bidding them in on the foreclosure; and accordingly that the basis for the assets is their fair market value at that time. Respondent denies the existence of the alleged partnership and that the action brought by Hardy was a foreclosure proceeding and contends that Hooper acquired the assets by purchase from the receivers, having as a basis his cost plus *141 certain other charges incident to the purchase. Section 3797(a)(2) of the Internal Revenue Code of 1939 defines the terms "partnership" and "partner" as follows: "* * * The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization. A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person." We have said, in interpreting section 3797(a)(2), that the mere ownership by two men of a second mortgage would not constitute the carrying on of a business, a venture, or a financial operation but would constitute merely the holding of property and would not support a conclusion tha the individuals involved were partners. Hallbrett Realty Corporation, 15 T.C. 157, 159 (1950). *142 The fundamental criterion in determining the existence of a valid partnership is the existence of an intent to join together in the conduct of a business. To this end, each of the partners must signify such intent to the others and enter into an agreement, either oral or written, that they will each share in the profits and losses of the enterprise. Nellie Russo Linsenmeyer, 25 T.C. 1126, 1132 (1956). The law of the State of Virginia, where the partnership was alleged to have existed, defines "partnership" as "an association of two or more persons to carry on as co-owners a business for profit." Code of Virginia (1950 ed.), section 50-6. Statutory rules of the State of Virginia for determining the existence of a partnership include one which provides that "Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property," and another providing that "The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or *143 interest in any property from which the returns are derived." Id. at sections 50-7(2) and 50-7(3). Judicial pronouncements in the State of Virginia amplify the bare words of the statute. In Walker, Mosby & Calvert v. Burgess, 153 Va. 779, 151 S.E. 165, 167 (1930), the Supreme Court of Appeals said that "carrying on" a business, as used in the statutory definition of "partnership," was a well-defined term and meant the conduct of a business for a sustained period for the purposes of livelihood or profit, and not merely the carrying on of some single transaction. It was in this case that the court stated that another essential element of a partnership was the element of "co-ownership." This court has also said that the particular test as to the existence of the partnership relation which is most widely accepted and which is applicable especially as between the parties themselves, irrespective of the rights of third persons, is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual *144 consent of the members. This intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction. Kennedy v. Mullins, 155 Va. 166, 154 S.E. 568, 570 (1930). In respect of the existence of a partnership as to third persons, the court concluded that it was generally agreed that it is essential that the parties charged as partners have a community of interest as common owners of the business which constitutes the joint undertaking, and that this community of interest be of such nature as makes each member a co-principal and an agent of all members, with joint authority or right in the administration, control, disposal of the business or its property. Partnership relations, said the court, are formed by a contract expressed or implied between two or more parties for joining together their money, goods, labor or skill in a venture or business, upon an agreement to divide the gains or losses between them. Cooper v. Knox, 197 Va. 602, 90 S.E. 2d 844, 847 (1956). In response to a question whether Hooper and Hardy were partners in any enterprise, property, or *145 undertaking, Henry V. Hooper, son of Hooper, testified that they were. A further question was "what property did they own jointly, or as partners, if they were as partners?" His reply was that Hooper and Hardy were partners in a real estate development and that certain property occupied by Warwick was carried in the name of Hardy & Hooper. The uncontroverted testimony established that Hooper and Hardy conducted some of their activities as partners. However, if petitioners contend that a partnership which may have existed between Hooper and Hardy encompassed all their multifarious business interests, including their stockholding in Mason and Warwick, they have introduced no evidence demonstrating this fact. Petitioners' contention that upon the separation of Hooper's and Hardy's interests third party creditors were paid before any amounts were distributed to Hooper or Hardy, thereby indicating that the court regarded the separation of interests as the dissolution of a partnership, is not supported by the evidence. The receivers' final report clearly shows that substantial amounts were paid by Mason to Hooper and Hardy while certain taxes assessed against Warwick went unpaid for lack *146 of funds with which the receivers could pay them. Neither have petitioners introduced any evidence of a separate partnership between Hardy and Hooper in respect of the stock which they owned in Mason and Warwick. In fact, what evidence was introduced comples an opposite conclusion. No evidence was introduced by petitioners which would show the existence of any partnership agreement, written or oral, between Hardy and Hooper for the ownership of their stock in Mason and Warwick. We note the testimony of William P. Edmondson, the certified public accountant, who prepared income tax returns for Mason, Warwick and Hooper. At no point in his testimony did Edmondson mention income tax returns filed on behalf of any partnership in which Hooper had an interest or any reason why such returns were not filed. No evidence was introduced by petitioners to show that Hardy and Hooper agreed to share any losses of Mason or Warwick or losses arising out of ownership of the stock of these corporations. No community of interest as common owners of the stock has been shown, the testimony clearly demonstrating that the stockholdings of Hardy and Hooper in Warwick were equal; that they as individuals *147 held approximately 90 per cent of the stock of Mason; and that Henry V. Hooper purchased some Mason stock from his father and that he and his father then held an amount equal to that held by Hardy. No reference was ever made to stock of either of these two corporations standing in the joint names of Hardy and Hooper or in the name of any partnership. As to Hardy and Hooper being co-principals in a partnership holding the stock of Mason and Warwick and being an agent each for the other, with joint authority or right in the administration, control, disposal of the business or its property, it is necessary to look only at the bill filed by Hardy in the corporation court. Paragraph 5 of the bill contained an allegation that for over three years the disagreements between Hardy and Hooper had made it impossible for them to hold any meetings of the boards of directors of Mason and Warwick and that each of them had acted independently on behalf of each corporation and without proper corporate authority, often over current and subsequent protest of the other. Paragraph 15 of the bill contained the allegation that Hardy had offered to exchange certain interests or to buy interests of Hooper *148 in the corporations or to sell his, Hardy's, interest in the corporations, but that Hooper refused to sell, buy, or exchange interests. In the last paragraph of the bill, Hardy prayed, inter alia, that receivers be appointed to take over and preserve the assets of each of the corporations and that orderly liquidation of each corporation be had and proper sale of the assets made by the receivers. The general rule is that the ordinary relationship between stockholders is not that of partners. Leventhal v. Atlantic Finance Corporation, 316 Mass. 194, 55 N.E. 2d 20, 23 (1944). In one case where the parties frequently referred to themselves as partners, the court said: "The chief basis for the contention that there was a partnership seems to be that the parties frequently referred to themselves as such. We are not clear as to the precise terms of the alleged partnership. The relationship, whatever it was, took form within the framework of two existing corporations, which continued to be legal entities distinct from their stockholders. That the plaintiff, the defendant, and Clark were the principal stockholders did not make them partners or either corporation a partnership. *149 " Martin v. Stone, 332 Mass. 540, 126 N.E. 2d 196, 200 (1955). Petitioners have not cited us to any authority which would demonstrate that this rule is otherwise in Virginia. On the basis of the testimony adduced at the trial and of the various exhibits introduced into evidence, it appears that Hardy and Hooper neither regarded themselves as members of a partnership which held the stock of Mason or Warwick nor held themselves out as such. We have not overlooked the affidavit of Judge Herbert G. Smith of the corporation court for the city of Newport News; however, we cannot find Judge Smith's statement that he "generally treated the suit as for a dissolution of partnership, which it was in substance if not in form" determinative of the issue of partnership, especially in light of the failure of petitioners to introduce any other evidence of such a business relationship. The petitioners are correct in their assumption that if Hooper was a secured creditor of Mason and Warwick and had acquired their physical assets by bidding them in upon a foreclosure proceeding his basis for the assets would be their fair market value at the time of that proceeding. Bondholders Committee v. Commissioner, 315 U.S. 189, 193 (1942). *150 They have not shown, however, that Hooper was a mortgagee of either Mason or Warwick or that he obtained the assets on a foreclosure proceeding. We have found that the action commenced by Hardy in the corporation court of the city of Newport News was not such a proceeding. The facts are clear that Hooper entered a bid for the assets at the private auction held by the corporation court on April 1, 1950. Hooper's bid of $25,000 for the land, buildings, equipment and inventory of Warwick and $57,500 for the land, buildings, equipment and inventory of Mason was the high bid and was accepted by the receivers with the approval of the corporation court. The respective consideration for these assets was paid to the receivers and was used by them to pay the debts and expenses of each corporation, with no commingling of the assets of the corporations. Petitioners introduced into evidence a deed showing that the land and buildings acquired by Hooper Valve (the land and buildings previously occupied by Warwick) were in the names of Hardy and Hooper. Both receivers' reports included the land and the buildings in the assets of Warwick, not without comment, however, that the property appeared *151 to be titled in the name of Hardy and Hooper, the minority receiver commenting further that the land and buildings should not be listed as an asset of the corporation. Finding that a payment of $25,000 had been made to the receivers for all the physical assets of Warwick, the corporation court ordered that Warwick execute and cause to be acknowledged and delivered a deed conveying all of its physical assets more particularly described by that court as including the land and buildings in issue. Notwithstanding the deed to this property standing in the names of Hardy and Hooper, both the receivers and the court treated the property as belonging to Warwick. Petitioners have not shown that there was any objection to this treatment or to the court's order. We believe that the land and buildings occupied by Warwick were owned by that corporation. Moreover, respondent determined deficiencies in the income tax paid by the petitioner Hooper Valve upon concluding that this petitioner's basis for its land, buildings, equipment and inventory was the $25,000 paid by Hooper to the receivers for those assets. Respondent allocated the $25,000 among the land, buildings, equipment and inventory *152 upon the basis of their respective fair market values. Respondent's determination that part of the $25,000 consideration paid to the receivers was for the land and buildings is presumed to be correct and must be sustained absent a contrary showing by petitioners. On the basis of the entire record, and taking into account the burden of proof upon petitioners, we cannot conclude that Hooper acquired the assets other than by purchase from the receivers of Mason and Warwick or that the land and buildings occupied by Warwick were not owned by that corporation and conveyed for part of the $25,000 consideration paid to its receivers. Respondent's determination must be sustained. Decisions will be entered for the respondent.