# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Richard C. Edmunds

v.

City of Newport News

January 8, 1997

Case No. (Law) 19718-RF

BY JUDGE ROBERT P. FRANK

The court took this matter under advisement after a bench trial. Counsel presented evidence November 15, 1996, and closing arguments were presented on December 9. For the reasons stated below, the court finds that Mr. Snow (assignor) equitably assigned to the plaintiff (assignee) the right to payment under the purchase orders at issue. Thereafter, the city violated the assignee's right to payment and is liable for the amounts paid in contradiction to the assignment.

## I. *Legal and Equitable Assignments*

The definition of assign is "to make or set over to another; to transfer; as to assign property or some interest therein." M.J., *Assignments*, § 2. An assignment is akin to a contract, requiring offer, acceptance, and consideration. *Id.* A "legal assignment is a manifestation of intent by the owner of a present right to make a present transfer of the right ... . In other words, a legal assignment is a transfer of a present right which divests the assignor of all control over that which is assigned." *Id.* However, a contract to transfer proceeds to be received in the future by the promisor is *not* a legal assignment. *Id.*

An assignment which is invalid at law, e.g., an assignment of a chose in action or of future acquisitions of the assignor may be enforceable as an

equitable assignment. *Black's Law Dictionary* (6th ed. 1990). "In order to constitute a valid assignment in equity, all that is necessary is an order from [one party to the contract to the other party] to pay the payee [the assignee]." *School Board v. First Nat. Bank*, 161 Va. 127 (1933). Funds due, such as money due a contractor for work completed, are assignable and have been held to be equitable assignments. *Id.*

*Alexander Bldg. v. Richmond Plumbing & Heating*, 213 Va. 470 (1973), is instructive to the present case. In *Alexander Bldg.*, the plaintiff was a supplier of building materials. The defendant was a general contractor for a construction project. The general contractor hired a subcontractor to install plumbing and heating at the construction site. The subcontractor sought to buy materials from the supplier. Because the supplier was concerned about the subcontractor's credit, the supplier requested assurance of payment. The subcontractor then wrote a letter to the general contractor stating: "[t]his will request and authorize you to make all further payments due [to the subcontractor] on the project jointly to [supplier] and [subcontractor] ... ." *Id.* at 471.

The general contractor wrote one check to the supplier and subcontractor as joint payees. The subcontractor then directed the general to make the remaining payment to the subcontractor as sole payee, representing he had settled with the supplier. In reality, the subcontractor owed the supplier additional money. When the supplier discovered that the general contractor had paid the subcontractor directly, the supplier instituted an action against the general contractor.

The trial court found for the supplier and awarded the supplier the amount paid to the subcontractor as sole payee. In affirming, the Supreme Court stated "whether there was an assignment, evidenced by the letter, presented a factual issue for the trial court to determine." *Id.* The Court concluded the trial court order could "properly have been based upon a ruling that the letter constituted an equitable assignment in favor of [the supplier]." *Id.* at 472.

Under an *Alexander Building* analysis, this court holds plaintiff received an equitable assignment for the right to payment of the construction contract.

## II. *The City's Defenses*

### A. *Fraud*

The city, without conceding a valid assignment was made, argues the assignor's fraud precludes enforcement of the alleged assignment. The city asserts two theories of fraud. First, the city argues Mr. Snow fraudulently

represented the name and corporate status of his business. There are six elements of a fraud charge: (1) false misrepresentation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994). The court finds the city has failed to prove the sixth element of a fraud charge: damage. The city did not demonstrate if or how it was damaged by the alleged fraudulent representation of the business name and corporate status. The court therefore holds the city's first theory of fraud fails for lack of proof.

The city's second theory of fraud relates to the insurance Mr. Snow had for his business. The contract at issue was for the demolition of the Nachman Building in Newport News. Those who bid on the job were required to present evidence of insurance to protect the city against injury and property damage claims. Def. Mem. at 1. The city alleges the construction company represented it had such insurance. *Id.* at 2. In fact, the city alleges the construction company did not carry such insurance. *Id., but see* T. at p. 14 (where city engineer stated the city learned that Mr. Snow's insurance had been cancelled in December, 1991).

In 1991, the tenant of the building adjoining the Nachman Building filed a suit against the city for damages to the adjoining building. *Id.* The construction company's insurer expressly declined coverage for damages to the adjoining building. *Id.* at 3. The city alleges, therefore, "without benefit of the insurance that [construction company] had represented to be in force, [the city] paid ... $17,000.00 to settle [the] claim for damages." *Id.*

The city's second theory of fraud requires a three-step analysis. The city first argues that the alleged assignment is not a legal assignment because it relates to a promise for future payment. Second, if an attempted transfer is not a legal assignment, the city argues a transfer may be enforced under certain circumstances by specific performance. Def. Mem. at 5. Third, this particular transfer cannot be specifically enforced "because equity will not intervene if the contract is grounded in 'fraud ... or gross misrepresentation'." *Id.* at 6 (citing *Clay v. Landreth*, 187 Va. 169, 176-77 (1948)).

The plaintiff in the *Clay* case, upon which city relies, attempted to specifically enforce a contract for the sale of land. The case does not relate in any way to the enforcement of an equitable assignment. The city relies on *Clay* to raise the argument that in general, equity should not intervene to enforce a fraudulent contract.

The city's argument, however, loses merit when analyzed under the facts of this case. Fraud excuses a party for his failure to perform a contract. *See Langman v. Alumni Ass'n.*, 247 Va. 491 (1994). The city fully performed in

this case by paying Mr. Snow for the work he completed. The city now seeks to retroactively apply the defense of fraud after both parties to the contract had performed. The city learned of Mr. Snow's insurance problems on March 21, 1991, at which time the city ordered Mr. Snow to stop working. Furthermore, the city was aware of a potential claim by the tenant of the adjoining building prior to the tenant's claim for damages. *See* Chancery File 21313-RC, Def. Ans., para. 4 (city acknowledged: "the City admits the plaintiff requested the City to stop performing the demolition in a manner that allegedly caused damage to it, and that the plaintiff notified the City about damages that the plaintiff claims to have suffered ... ."); *see also*, Chancery File 21313-RC, Pl. Exbt. 1 (letter dated March 5, 1991, from the city, acknowledging damage to the adjoining building).

Despite such knowledge, the city made a payment on March 12, 13, and 26, 1991, to Mr. Snow as sole payee. After the insurance problems were resolved, the city ordered Mr. Snow to return to work. Assuming *arguendo* that Mr. Snow perpetrated a fraud, the city waived the defense of fraud when the city made payments to Mr. Snow for the work he performed with the knowledge of both the potential claim by the adjoining tenant and of Mr. Snow's insurance problems. *See* T. at 141-145.

## B. *Failure of Proof*

The city furthermore alleges the plaintiff failed to prove he was due money from Mr. Snow for the demolition projects, i.e., if Snow had paid plaintiff in full, the City was not indebted to plaintiff. Upon a review of the transcript, the court finds sufficient evidence that the plaintiff did not receive repayment from Mr. Snow for the amounts of the assignment. The plaintiff testified he had never been repaid by either Mr. Snow or defendant for the amount the city paid in violation of the assignment. T. at 68. The plaintiff furthermore testified he had not received payment from Mr. Snow for the other demolition projects for which the plaintiff had advanced money to Mr. Snow. T. at 77.

## C. *Partnership*

The city's remaining defense is that Mr. Snow, owner of the construction company, and plaintiff were operating as partners. As such, the city argues, the city is not indebted to plaintiff since payment to one partner is payment to all partners. The elements of a partnership are defined under the Uniform Partnership Act in the Virginia Code. Under that Act, sharing of profits from a business is prima facie evidence of the existence of a partnership. In addition

to the elements enumerated in the Code, Virginia case law recognizes that, in order for a partnership to exist, both parties must intend to be partners. Based on the Code and relevant case law, the court finds that Mr. Snow and the plaintiff did not operate as partners.

The Virginia Code defines and regulates the operation of partnerships under the Uniform Partnership Act. Va. Code Ann. § 50-1 *et seq*. "A partnership is an association of two or more persons to carry on as co-owners of a business for profit." Va. Code Ann. § 50-6. The Code lays out a number of rules to apply when determining whether a partnership exists:

1. Joint tenancy by itself does not establish a partnership;

2. The sharing of gross returns does not itself establish a partnership;

3. "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if the profits were received in payment:"

a. As a debt by installments;

b. As interest on a loan.

Va. Code Ann. § 50-7.

The Virginia Code also recognizes the concept of partnership by estoppel. Va. Code Ann. § 50-16. When a person by words or conduct represents himself as a partner with one or more persons not actually partners, "he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the ... apparent partnership ... ." *Id*.

In addition to the factors outlined above, parties must intend to be partners under Virginia case law. Noting that a mere creditor of one party cannot be considered a partner with that party, the Court in *Cullingworth v. Pollard*, 201 Va. 498 (1960), described what constitutes a partnership. "The particular test as to the existence of the partnership relation which is most widely accepted today ... is that a partnership is formed and exists only when it was the intention of the parties that they should be partners ... . Every partnership rests on the mutual consent of the members ... ." *Id*. at 505 (citing *Kennedy v. Mullins*, 155 Va. 166, 174 (1930)).

The *Pollard* court recognized that no one test exists to determine whether a partnership exists: "No one factor or circumstance can be taken as a conclusive criterion, but each case must be determined upon its own particular facts and surrounding circumstances." *Id*. (citing C.J.S., *Partnership*, § 30, p. 450). The court also noted: "It is generally agreed that in order to constitute a partnership as to third persons, it is essential that the parties charged as partners have a community interest as common owners of the business which constitutes a joint undertaking." *Id*. (citing C.J.S.).

In the present case, the court finds that Mr. Snow and the plaintiff did not share profits from a business. The Code specifically states no inference of a partnership should be drawn when an individual receives a share of profits from another when received as payment of a debt or interest on a loan. Va. Code Ann. § 50-7. Further, the city failed to establish that Mr. Snow and the plaintiff each intended to operate as partners. *See Pollard*, 201 Va. at 505.

The court finds the city made three payments to Mr. Snow which were in violation of a valid equitable assignment. The city's various defenses do not overcome the evidence that the city wrongfully paid Mr. Snow after acknowledging the assignment to plaintiff in writing. The court therefore finds for the plaintiff and will enter judgment against the defendant in the amount of $13,520.00.