JUSTICE LACY, with whom JUSTICE KINSER and JUSTICE LEMONS join, dissenting.
The majority concludes that plaintiff’s evidence of an equitable assignment was properly struck by the trial court because Edmunds “failed to present evidence that Snow, acting on behalf of Abatement, intended to relinquish all control of the funds.” To reach this result, the majority attempts to distinguish controlling case law and claims to apply well-established standards of appellate review, but fails on both counts.
To strike Edmunds’ evidence, the trial court in this case had to conclude that the evidence was insufficient to support a jury verdict in his favor. The trial court was required to accept as true all the evidence favorable to Edmunds as well as any reasonable inference a jury might draw therefrom which would sustain his cause of action. The trial court was not to judge the weight and credibility of the evidence or to reject any inference from the evidence favorable to Edmunds unless it would defy logic and common sense. Austin v. Shoney’s, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997). On *440 appellate review, we apply these same principles. Waters v. Safeway Stores, Inc., 246 Va. 269, 270, 435 S.E.2d 380, 380 (1993).
While the majority recites much of the evidence produced at trial, it ignores additional evidence that had been introduced. Beginning in 1989, Edmunds and Snow developed a business relationship whereby Edmunds would provide Snow with working capital for projects performed by Abatement. In 1993 or 1994 when Abatement first performed work for CBC, Edmunds and Snow had an agreement that Edmunds “would provide the operating capital and when the funds came in from [Snow’s] customer they would come to [Edmunds].” Six or seven projects were undertaken this way. In each of these projects, Edmunds received a copy of a letter sent from CBC to Snow referencing an agreement between Snow, CBC, and Edmunds that payments for the work done by Snow would be made directly to Edmunds.
Prior to the execution of the CBC contract at issue here, Edmunds and Snow discussed what their business relationship would be if Abatement got the contract. Edmunds again agreed to provide Abatement operating capital for the project, and, in return, Edmunds was to get the “assignment of monies” to him. Edmunds testified that in August, “Mr. Snow had assigned the proceeds to me like we had previously been doing on all other contracts.” The contract was executed between Abatement and Snow on August 18, 1995. Edmunds informed CBC of his agreement with Snow and asked CBC for a letter like the previous ones confirming the assignment. CBC, however, did not send a letter confirming the assignment for this project because there was a change in company policy.
At a meeting between CBC, Edmunds, and Snow, Edmunds suggested three solutions in the order of his preference: (1) that the former procedure be followed, (2) that the checks be made jointly payable to Edmunds and Abatement, or (3) that Abatement’s checks be mailed to Edmunds in Richmond. With regard to the last option, Edmunds explained that because Abatement was a Tidewater company, by sending the checks directly to Richmond “there’s no chance of it being mishandled by anybody.” Edmunds could then deposit the checks into an already-existing bank account in Richmond set up by Snow in the name of Abatement Controllers/JWG, Inc. Edmunds “was the only authorized signature to write checks on this account for Abatement. . . .” Likewise, statements for the account were sent only to Edmunds’ address.
*441 Following this meeting, Snow sent a letter to CBC asking that the checks be made jointly payable to Edmunds and Abatement and that the checks be sent to Edmunds at his address in Richmond. Change Order No. 2 was entered, directing that Abatement’s checks be sent to Edumunds. However, Edmunds never received any checks from CBC because CBC complied with Snow’s subsequent request to void Change Order No. 2 and to pay Snow directly.
The majority acknowledges that the following principles apply to the creation of equitable assignments, but fails to apply them properly to the evidence presented. Equitable assignments need not be written; they may be shown by the parties’ oral statements, acts, or conduct. Va. Mach. & Well Co. v. Hungerford Coal Co., 182 Va. 550, 556, 29 S.E.2d 359, 362 (1944). Although it is true that the assignor must not retain control over the funds assigned, the intent of the assignor is the controlling consideration in determining whether control has been relinquished. S.L. Nusbaum & Co. v. Atl. Va. Realty Corp., 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966).
The majority points to four pieces of evidence in support of its conclusion that the evidence was insufficient to support a jury verdict finding the existence of an equitable assignment: Snow’s instruction to CBC to issue jointly payable checks; Edmunds’ admission that “CBC did not agree to issue joint checks for amounts due Abatement”; the failure of Change Order No. 2 to provide for the issuance of joint checks; and Snow’s directive to CBC to void Change Order No. 2 and pay Snow directly. Under our existing case law, none of these facts defeats the creation of an equitable assignment as a matter of law.
According to the majority, ordering the issuance of joint checks showed that Snow intended to retain “some degree of control over the property that was purportedly assigned,” 261 Va. at 437, 544 S.E.2d at 327, thereby defeating the creation of an equitable assignment. However, in both Virginia Machinery & Well Co., and Alexander Building Construction, Inc. v. Richmond Plumbing & Heating Supplies, Inc., 213 Va. 470, 193 S.E.2d 696 (1973), we held that an equitable assignment had been created, even though the payments by the debtor were made jointly to the assignor and assignee. “The form in which the checks were requested to be drawn neither legally nor equitably affected the ownership or control of the funds represented.” Va. Mach. & Well Co., 182 Va. at 557-58, 29 S.E.2d at 363.
Though other evidence may prove or disprove the creation of an equitable assignment, jointly payable checks are, at most, equivocal *442 evidence of an absence of intent to relinquish control over the funds and create an equitable assignment. For instance, in Virginia Machinery & Well Co., we noted that paying by joint check may be done for the purpose of providing a receipt to the assignor’s debtor and giving information to the assignor of the amount received by the assignee. 182 Va. at 557, 29 S.E.2d at 363. In the context of this case, where checks had been made payable solely to the assignee, but the drawer now wished to make them payable only to the assignor, Snow’s request for joint checks can be seen as an intent to ensure payment to the assignee in a manner acceptable to the drawer. When more than one inference can be drawn from the facts, the inference favoring the position of the plaintiff must be adopted when considering whether a motion to strike should be granted. The majority ignores this principle when it opines that Abatement’s directive to issue jointly payable checks demonstrated an intent to maintain control over the funds.
Next, the majority points to Edmunds’ admission that CBC did not agree to issue joint checks for the funds due Abatement on the project. However, written confirmation of an assignment by the assignee’s debtor does not create the equitable assignment; it “merely evidence^] notice of the assignment.” Va. Mach. & Well Co., 182 Va. at 557, 29 S.E.2d at 363. Thus the “admission” relied upon by the majority, while evidence in the case that CBC did not wish to issue joint checks, does not defeat the creation of the equitable assignment between Edmunds and Snow.
The final two pieces of evidence supporting the majority’s conclusion are equally deficient. The majority cites not including joint payment of checks in Change Order No. 2 as showing a lack of intent to relinquish control over the funds and to create an equitable assignment. First, that decision appears to have been made by CBC and does not provide evidence of Snow’s intent. Second, this position is in direct conflict with the majority’s earlier assumption that seeking joint payment shows a lack of such intent. Thus, the value of this evidence in supporting a conclusion that Snow did not intend to relinquish control over the funds and create an equitable assignment is suspect.
Finally, Snow’s duplicity in subsequently voiding his previous request to CBC regarding the joint payment and delivery of the checks should not be rewarded by considering it as proof positive that Snow never agreed to the equitable assignment. Of course, the posture of this case requires that any inferences from this evidence *443 flow in favor of Edmunds. The inference here is that Snow wanted to avoid honoring his agreement with Edmunds.
In both Virginia Machinery & Well Co. and Alexander Building, the evidence was found to be sufficient to support a conclusion that an equitable assignment was created. In this case, we need not decide whether an equitable assignment was created. We must determine only whether the evidence was sufficient to support such a finding. Whether evidence exists to support a contrary finding is immaterial at this juncture. The pattern of prior assignment agreements between Edmunds and Snow, the oral agreement testified to by Edmunds regarding the assignment of the funds on the project at issue, the presence of Snow at a meeting with Edmunds and CBC regarding Edmunds’ request to CBC for direct payment, joint payment, or direct delivery of the checks to Edmunds, Snow’s acquiescence in those requests reflected in Snow’s subsequent letters and meetings with CBC, and the bank account established by Snow for Abatement’s checks with Edmunds as the only authorized signatory all constitute sufficient evidence of Snow’s intent to assign the proceeds of Abatement’s contract with CBC to Edmunds. Therefore, this issue should not be decided by this Court or by the trial court, but rather should be submitted to the jury for determination. Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings.