# Richmond

## VIRGINIA MACHINERY & WELL COMPANY, INC. v. HUNGERFORD COAL COMPANY, INC.

March 13, 1944.

Record No. 2762.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Gordon & Gordon* and *Montague & Montague*, for the plaintiff in error.

*George D. Bowles*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On May 13, 1942, the Hungerford Coal Company, Inc., hereinafter called the Coal Company, obtained in Police Court, Part II, of the City of Richmond, Virginia, a judgment against S. B. Franklin for $412 and costs. The judgment not having been satisfied, on September 8, 1942, a garnishee summons was issued and served on the Mutual Life Insurance Association, a corporation, and the Virginia Machinery & Well Company, Inc., returnable to the said police court. The summons, reciting the issuance of an execution on August 4, 1942, on the above judgment, commanded the above named garnishee defendants to answer the suggestion of the judgment creditor "that by reason of the lien of the said execution," there was a liability upon them. A judgment being rendered in the police court in favor of the Coal Company, appeal was taken to the Hustings Court of the City of Richmond, Part II, bringing the cause on to be heard

and determined therein according to the principles of law
and equity. Virginia Code, 1942, (Michie) section 6038.

The Mutual Life Insurance Association, hereinafter re-
ferred to as Mutual, filed its answer in the Hustings Court
admitting that it held, at the time of the service of the
garnishee summons upon it, the sum of $3,225, due under
its contract with S. B. Franklin, which entire balance it al-
leged was claimed by the Virginia Machinery & Well Com-
pany, Inc., hereinafter referred to as the Well Company, by
virtue of an assignment of said sum by S. B. Franklin to the
Well Company for a valuable consideration, made prior to
the service of the garnishee·summons upon the Mutual, and
that it had paid to the Well Company $2,700, leaving a bal-
ance of $525 due under its contract with Franklin, which it
held subject to the decision of the court.

All matters of law and fact were submitted to the trial
court without a jury. The trial court, after hearing the evi-
dence on June 15th, continued the case to June 23, 1943.
On the latter date, the court, "being of opinion there was no
sufficient assignment" by Franklin of the funds to the Well
Company, entered judgment that the Coal Company recover
from the Mutual, the garnishee defendant, the sum of $412,
with interest and costs. From this judgment the Well
Company and Mutual obtained this appeal.

The trial court filed a short written opinion on the date
the judgment was entered. At a subsequent date, July 8,
1943, after the certificate of all the evidence had been
signed, the court amended its former opinion, over the objec-
tion of the appellants, by inserting therein the additional
statement that an execution had also been issued on May 13,
1942, on the judgment, returnable July 11, 1942.

The controlling issues are whether the evidence proves an
assignment by Franklin to the Well Company of monies due
under his contract with Mutual, and if it does whether or
not the assignee of the money is entitled to priority over
the garnishment creditor.

The only evidence introduced was on behalf of the appel-
lants. Three witnesses testified, and their testimony was

uncontradicted and the witnesses unimpeached. The evidence is as follows:

Hill Montague, president of Mutual, testified that his Association entered into an agreement, on or about June 29, 1942, with Franklin under which Franklin was to furnish and install certain plumbing and heating fixtures in five new dwelling houses, at a price of $4,000; that on July 1, 1942, Mutual paid Franklin $775 to complete the work on one house; that Franklin called at his office on July 3, 1942, and told him that he had assigned the money due him under his contract to the Well Company and requested that the checks for the money be made payable to him and the Well Company; that he considered the statements by Franklin to him as an order on Mutual to pay the balance of the money due under Franklin's contract to the Well Company and so accepted same for Mutual; and that he was informed on several occasions by Charles F. Cole, president of the Well Company, that the latter had an assignment of the money and that on February 22, 1943, after the summons in garnishment had been served upon him, he paid to the Well Company $2,700 on account of said assignment, reserving $525 to await the disposition by the court of the claim of the Coal Company.

He identified correspondence between Mutual, written by himself, and the Well Company, written by its store manager, in which it was agreed that future checks would be made out jointly to Franklin and the Well Company, and that, in view of the assignment, Mutual would not require a mechanics' lien waiver from the Well Company.

Franklin stated that, having secured the contract with Mutual in the latter part of June, 1942, he requested the Well Company to supply him with the necessary materials; that he was indebted, at that time, in a large sum of money to the Well Company and that the latter was unwilling to give him credit for supplies unless he assigned the money that would be due him under his contract with Mutual; that Charles F. Cole, of the Well Company, told him that before supplying the materials, he would require the account to be

assigned to his company, so that his company would have control of it and that he agreed to the proposition; that the supplies were furnished by the Well Company and used in the performance of his contract with Mutual; that under his agreement with Cole, he intended to give absolute control and absolute ownership of the money to be due him under the said contract to the Well Company; that he told Montague to have the checks made payable jointly, since he understood that Mutual would want a receipt from him in any event; and that, so far as he was concerned, his name was to be included in the check only for the purpose of giving a receipt to Mutual, but that this did not affect the control or ownership of the money by the Well Company.

Charles F. Cole, president of the Well Company, testified that in the latter part of June, 1942, Franklin requested his company to sell him the plumbing and heating supplies mentioned; that at this time, because of Franklin's indebtedness to his company, the latter was unwilling to give Franklin further credit unless payment for the supplies was secured; that he told Franklin that his company would supply him with the necessary materials, upon the condition that Franklin would assign the money to be due him under his contract with Mutual, both for the payment of the purchase price of his own supplies and as security for his prior indebtedness; that, further, the assignment would have to be in a mode whereby the Well Company would have complete control over it; and that Franklin readily agreed to those conditions.

He further said that Franklin accounted to the Well Company for $550 of the $775 received by Franklin from Mutual before Mutual was advised of the assignment, Franklin being allowed to use $225 for his payroll in completing the five houses; that the Well Company filed no mechanics' liens against the houses because it was relying on being paid for the purchases by Franklin out of the assignment by him of the monies to be due under the latter's contract with Mutual; and that Franklin did not receive any part of the

check for $2,700, it being applied wholly to his account with the Well Company.

The facts are rather clear, we think, and present little difficulty. Let us look at the law.

"It is settled law that as a general rule the obligation arising under a contract may be assigned to a third party, the assignment or transfer may be made to appear by oral statements of the parties, or by their acts and conduct." *Dove Co.* v. *New River Coal Co.*, 150 Va. 796, 143 S. E. 317.

"Equity looks at the substance of a transaction and not its mere form. No particular form of words is necessary to constitute a valid assignment in equity of a chose in action * * * . It is sufficient if the debtor would be protected in making payment thereon." *Rinehart, etc., Co.* v. *McArthur*, 123 Va. 556, 96 S. E. 829.

"There can be no doubt as to the doctrine that when, for a valuable consideration from the payee, an order is drawn upon a third person and made payable out of a particular fund, then due or to become due from him to the drawer, and is delivered to the payee, it operates as an equitable assignment *pro tanto* of the fund, and constitutes a lien upon it in the hands of him who owes the debt, or has possession of the fund out of which the order is made payable. (Citing authorities and cases).

" * * * To constitute an equitable assignment there must be an assignment or transfer of the fund or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer." (Citing authorities and cases). *Hicks* v. *Roanoke Brick Co.*, 94 Va. 741, 27 S. E. 596.

"The form of the assignment was not material. Words which show an intention of transferring or appropriating a *chose in action* to or for the use of another if based upon a valuable consideration will in the contemplation of a court of equity operate as an assignment." *Tatum* v. *Ballard*, 94 Va. 370, 26 S. E. 871.

"No particular form is necessary to constitute an equitable assignment of a debt or chose in action. An order for valuable consideration which absolutely appropriates a fund is a good equitable assignment of the fund * * * ." *Switzer v. Noffsinger*, 82 Va. 518.

See to the same effect 4 Am. Jur., Assignments, sections 76 and 77.

In *Mack Mfg. Co.* v. *Smoot & Co.*, 102 Va. 724, 47 S. E. 859, we held that a written order from a contractor to his employer city, requesting it to pay to a third person the amount due to the contractor from time to time, as payments became due, was a valid equitable assignment of the amount due or to become due from the city to the contractor, and, having been for value, took priority over subsequent executions against the contractor. The city warrants were made payable to the assignor and delivered by the city to the assignee, a practice employed by the city auditor to avoid confusion in his accounts.

Upon principle and upon authorities cited, the oral agreement between Franklin and the Well Company constituted a valid assignment of the funds in question. The letters passing between Mutual and the Well Company did not constitute the assignment; they merely evidenced notice of the assignment to Mutual and provided the form of payment. The assignment depended upon the agreement between Franklin and the Well Company. That agreement, according to the undisputed evidence, transferred absolutely and unconditionally all of the interest of the assignor in the fund, and Franklin testified that such was his intention. The method for making the payment by a joint check was only for the purpose of providing a receipt to Mutual and giving information to Franklin of the amount received by the Well Company.

Although no joint check was ever actually drawn, if it had been so drawn, the Well Company could have compelled Franklin to endorse it for full payment to the assignee under the evidence here presented. The form in which the checks were requested to be drawn neither legally nor

equitably affected the ownership or control of the funds represented. The Well Company was entitled to full and complete ownership and control. Equity looks at the substance and not mere form.

There are several other errors assigned, which we do not think affect the above conclusion or the final result. The trial court excluded the evidence of Cole with reference to his conversation with Franklin on the ground that it was hearsay. This was error. What Cole testified to was of his own personal knowledge and it was admissible on the ground that it was a part of the formation of the contract of assignment between Franklin and the Well Company, through the latter's president and agent, Cole. Even though it be excluded, the remaining evidence is sufficient to establish a valid assignment.

Considering the amendment of the trial court's opinion as certifying that the added fact was a part of the record, that fact alone does not change the position of the assignee. It appears that the purpose of the amendment was to afford a reliance upon the lien created by the issuance of the execution of May 13th, although the summons which instituted this garnishment proceeding was, on its face, specifically based on the execution dated August 4th.

Virginia Code, 1942, (Michie) section 6501, provides that, "Every writ of *fieri facias* shall, in addition to the lien it has under section sixty-four hundred and eighty-five on what is capable of being levied on under that section, be a lien from the time it is delivered to a sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of the said writ become, possessed or entitled, * * * except such as is exempt under the provisions of chapter two hundred and seventy-four, and except *that, as against an assignee of any such estate for valuable consideration, the lien by virtue of this section shall not affect him unless he had notice thereof at the time of the assignment * * * .*" (Italics supplied).

If the Coal Company, upon the trial, had relied on the execution of May 13th, which was outstanding prior to the time of the assignment, the question might have arisen as to whether or not the Well Company was an assignee for value without notice. The pleadings failed to show that the lien was claimed under the execution of May 13th. There is no reference in the judgment order to that execution; but there is reference to the execution of August 4th, in recording the objection and the exception to the entry of the judgment. There was no attempt to show, by evidence, that the assignee had notice of the execution of May 13th at the time of the assignment, and the mere issuance of an execution constitutes no notice to a *bona fide* assignee for valuable consideration.

"Our statute—section 3601 of the Code—(section 6501 of Code, 1942) expressly excepts from the lien of a writ of *fi. fa.* any estate of the debtor which has been assigned for a valuable consideration, unless the assignee had notice of the *fi. fa.* at the time of the assignment." *Mack Mfg. Co.* v. *Smoot & Co., supra.*

It follows that the judgment of the trial court was erroneous. This court will enter such judgment as it should have entered; namely, that the Virginia Machinery and Well Company, Inc., recover of the Mutual Life Insurance Association the sum of $525, the sum which the latter held subject to the decision in these proceedings, and that the plaintiffs in error also recover of the defendant in error the cost incurred by them in this court and in the trial court.

*Reversed and final judgment.*