## Richmond

ALEXANDER BUILDING CONSTRUCTION, INC. v. RICHMOND PLUMBING & HEATING SUPPLIES, INC.

January 15, 1973.

Record No. 8023.

Present, All the Justices.

*Paul M. Shuford (Randolph E. Trow, Jr.; Joseph S. Bambacus; Wallerstein, Goode, Dobbins & Shuford; Heberle & Bambacus, on brief), for plaintiff in error.*

*M. Wallace Moncure, Jr. (J. Wellford Smith; Moncure & Cabell, on brief), for defendant in error.*

Per Curiam.

The trial court, sitting without a jury, awarded judgment in favor of Richmond Plumbing & Heating Supplies, Inc. (Richmond), against Alexander Building Construction, Inc. (Alexander), for materials supplied for a construction job. To the judgment order entered December 3, 1971, awarding Richmond the sum of $2, 494. 82, with interest and costs, we granted Alexander a writ of error to determine whether the action of the trial court was contrary to the law and the evidence.

Alexander was a general contractor employed to construct an apartment project known as Squire Apartments. W. G. Satterwhite, trading as W. G. Satterwhite Plumbing & Heating Company (Satterwhite), was a subcontractor employed by Alexander to install plumbing and heating in the apartments. Satterwhite purchased plumbing and heating supplies from Richmond.

Richmond, concerned about Satterwhite's credit, advised him that it would not supply any more materials unless he could give assurance of payment. Accordingly, Satterwhite signed a letter, dated November 18, 1969, prepared on his stationery by Richmond and addressed to Alexander. The letter stated that "[t]his will request and authorize you to make all further payments" due Satterwhite on the project jointly to Richmond and Satterwhite and noted that the balance payable under the subcontract was $4,050.00. Satterwhite took the letter to Alexander, had Alexander's authorized agent sign it "Accepted" on December 2, 1969, and then returned it to Richmond.

Richmond's records show that it supplied no materials to Satterwhite on this job after September 9, 1969, until December 10, 1969, and that materials were supplied on December 10, 1969, and on subsequent dates ending December 16, 1969. Alexander issued its check dated December 9, 1969, to Richmond and Satterwhite as joint payees in the sum of $900.00. After Satterwhite endorsed the check, Richmond deposited it on December 15, 1969 and credited the payment to Satterwhite's account.

On January 28, 1970, upon Satterwhite's representation that he had settled with Richmond, Alexander delivered to him its check made out to Satterwhite as sole payee for $3,270.00, the balance due on the subcontract, and received from Satterwhite a waiver of mechanics' liens as subcontractor and materials supplier. When Richmond discovered that final payment had been made to Satterwhite it instituted this action against Alexander for $2,494.82, the balance owed by Satterwhite for materials supplied to him by Richmond on the apartment project.

Alexander argues that the Satterwhite letter was nothing more than a simple request for his own benefit that he could revoke at any time. That argument is based on the admitted facts that Richmond did not sign the letter and did not notify Alexander, before final payment was made, that it was relying on the payment procedure therein provided as an assignment.

But whether there was an assignment, evidenced by the letter, presented a factual issue for the trial court to determine. There was

uncontroverted evidence that Richmond relied entirely on the letter in continuing to supply materials to Satterwhite. The trial court could have found from the wording of the letter, from Alexander's written acceptance thereof, from the $900.00 payment made pursuant thereto and from its own evaluation of the credibility of the witnesses that Alexander had actual or imputed knowledge that the letter was intended to be an assignment and that Richmond was relying on it, even though there was no direct communication between Richmond and Alexander.

The trial court did not deliver an opinion setting forth findings of fact and conclusions of law. Nevertheless, we conclude that its judgment could properly have been based upon a ruling that the letter constituted an equitable assignment in favor of Richmond.

No particular form is required for an equitable assignment. An order upon a third person made payable out of a particular fund, communicated to such person and delivered to the payee operates as an equitable assignment *pro tanto* and constitutes a lien upon the fund. The assignment is sufficient if the debtor would be protected in making payment in accordance with it. *Virginia Machinery* v. *Hungerford Coal Co.*, 182 Va. 550, 556, 29 S.E. 2d 359, 362-63 (1944). Here, unquestionably Alexander would have been protected if it had complied with the terms of the letter in making final payment. As it disregarded the letter in violation of the assignee's rights, the trial court correctly held Alexander liable to Richmond for the amount owed by Satterwhite.

*Affirmed.*