**In re Carol Lynn GRAHAM, Debtor.**

**Barbara GILBERT and Phyllis Johnson, Movants**

v.

**Carol Lynn GRAHAM, Respondent.**

No. 7–96–03094.

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

March 28, 1997.

James R. Cromwell, Roanoke, VA, for Movants.

Mary E. Harkins, Rocky Mount, VA, for Debtor.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The issue before the Court is whether the Debtor's homestead exemption, claimed in the proceeds from the sale of her residence, takes priority over Movants' contractual claim for brokerage fees. The Court denied Movants' objection to exemption on December 16, 1996, and the present motion to alter or amend judgment followed. The parties were given an opportunity to submit memoranda in support of their respective positions, and a hearing was held on January 15, 1997. The Court has reviewed the record and the memoranda, and the matter is ripe for decision.

### Facts

In September 1996, Carol Lynn Graham (the "Debtor") and her husband executed a contract to sell their Franklin County residence to Jimmy and Dreama Barbour. In conjunction with the purchase agreement, the parties signed a "Designated Agency Consent and Confirmation Agreement" naming Phyllis Johnson and Barbara Gilbert ("Movants") as the seller's agent and buyer's agent, respectively. The form sales contract, provided by the Roanoke Valley Association of Realtors, contained the following provision:

10. BROKERAGE FEE: Seller represents that he has agreed that the Listing Firm will be paid, based on the purchase price, a fee for services of 6% (brokerage fee). In the event this is a cooperative sale, the Selling Firm is to receive 50% of the brokerage fee to be paid to the Listing Firm. Seller hereby authorizes and directs the settlement company to disburse to the Listing Firm and the Selling Firm from Seller's proceeds the respective portions of the fee at settlement.

On September 19, 1996, a few days after the contract was executed, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. In her list of property claimed as exempt, the Debtor included $2,500.00 of equity in her Franklin County residence, and she filed a homestead deed claiming a $1.00 exemption in the realty. Believing that the Debtor intended to amend her exemption to an amount equal to the net sale proceeds, before payment of the brokerage fee, and believing that the proceeds would not be sufficient to pay the first lien deed of trust, closing costs, and commissions, Movants filed an objection to Debtor's exemption. Subsequently, the residence was sold, and the proceeds were used to satisfy the first lien deed of trust and closing expenses. As anticipated by Movants, however, the remaining funds were insufficient to pay the real estate commissions in full. Therefore, the proceeds were placed in escrow pending an order of disbursement from this Court.

### Positions of the Parties

Movants aver that the Debtor's interest in her residence, and thus in the sale proceeds, is governed by the purchase agreement she executed pre-petition. Pursuant thereto,

they argue, the Debtor assigned to Movants six percent of the gross sale proceeds. As the Debtor had no right to receive those funds as of the petition date, the money did not become property of the estate. As debtors may only exempt property that falls within the bankruptcy estate, Movants conclude that the Debtor's exemption claim in the sale proceeds was invalid. Therefore, pursuant to the assignment, Movants are entitled to be paid their commissions directly from those funds. In response, the Debtor avers that the Court acted properly in denying Movants' objection to exemption.

## Discussion

■ The filing of a petition under 11 U.S.C. § 301 creates an estate comprised, in part, of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 522(b) authorizes debtors to claim exemptions in certain property of the estate, depending upon applicable State law. 11 U.S.C. § 522(b); *Va.Code Ann.* § 34–3.1 (Michie 1996). It follows, therefore, that if a debtor has transferred his interest in property to a creditor pre-petition, that property does not come within the bankruptcy estate, and a debtor may not claim an exemption therein. *Owen v. Owen*, 500 U.S. 305, 308–09, 111 S.Ct. 1833, 1835–36, 114 L.Ed.2d 350 (1991); *In Re Sloma*, 43 F.3d 637, 640 (11th Cir.1995). Such a transfer is achieved when a debtor executes a valid assignment. *Sloma*, 43 F.3d at 640. Consequently, a decision on whether the Debtor's claimed exemption in the proceeds from the sale of her residence takes priority over the Movants' real estate commissions turns on the interpretation of the purchase contract. More specifically, it depends on whether the following language constitutes an assignment of six percent of the Debtor's proceeds: "Seller hereby authorizes and directs the settlement company to disburse to the Listing Firm and the Selling Firm from Seller's proceeds the respective portions of the fee at settlement."

■ Whether the above language gives rise to a valid assignment is governed by Virginia law. *Lone Star Cement Corp. v. Swartwout (In Re Richmond Lumber)*, 93 F.2d 767 (4th Cir.1938). No particular words or acts are necessary to effect an assignment, *S.L. Nusbaum & Co. v. Atlantic Virginia Realty Corp.*, 206 Va. 673, 146 S.E.2d 205, 210 (1966), and it may be in oral or written form. *Lone Star*, 93 F.2d at 769. The substance of the transaction, not its form, is dispositive, *Virginia Mach. & Well Co. v. Hungerford Coal Co.*, 182 Va. 550, 29 S.E.2d 359, 362 (1944), and the assignor's intention is the controlling consideration. *Kelly Health Care, Inc. v. The Prudential Ins. Co.*, 226 Va. 376, 309 S.E.2d 305, 307 (1983) (citing *Nusbaum*, 146 S.E.2d at 210).[1]

■ A mere agreement to pay a debt out of a particular fund, when received, does not constitute an equitable assignment because it only amounts to a promise to pay. It fails to evidence the assignor's intent to give and the assignee's intent to receive present ownership of the fund. *Lone Star*, 93 F.2d at 770; *Nusbaum*, 146 S.E.2d at 210. However, "[a]n order upon a third person made payable out of a particular fund, communicated to such person and delivered to the payee operates as an equitable assignment pro tanto and constitutes a lien upon the fund." *Alexander Bldg. Constr., Inc. v. Richmond Plumbing & Heating Supplies, Inc.*, 213 Va. 470, 193 S.E.2d 696, 698 (1973) (citing *Virginia Mach. & Well*, 29 S.E.2d at 362).

In *Rinehart & Dennis Co. v. McArthur*, 123 Va. 556, 96 S.E. 829 (1918), the Virginia Supreme Court was presented with a Defendant ("McArthur") who had deposited $1,200.00 with the Dickenson County Court in lieu of a bond. He then wrote to his attorney and instructed him to pay the $1,200.00 to Rinehart & Dennis Company

---

1. The court continued by noting that:
   The intent to transfer a present ownership of the subject matter of the assignment to the assignee must be manifested by some word, written or oral, or by some act inconsistent with the assignor's remaining as owner. This has sometimes been called a "present appropriation." The assignor must not retain any control over the fund or property assigned, any authority to collect, or any form of revocation. *Id.*

when the funds were no longer needed for security. *Id.*, 96 S.E. at 833. Almost two years later, McArthur sent another letter to his attorney and rescinded the order. The court, in finding that McArthur's dedication of the funds constituted an equitable assignment, pointed to McArthur's testimony on cross-examination. There, he explicitly stated that he parted with ownership of the $1,200.00 and that, at the time of the original letter to his attorney, "it was [his] intention for Rinehart & Dennis Company to get that money."[2] *Id.*

*Lone Star Cement Corp. v. Swartwout (In Re Richmond Lumber Co.)*, 93 F.2d 767 (4th Cir.1938), involved a lumber company in need of cement to comply with a government contract. Aware of the lumber company's precarious financial position, Lone Star agreed to supply them on the condition that the money received from the government would be applied solely to the payment of Lone Star's account. Subsequently, the lumber company also promised repayment from the proceeds of certain accounts receivables that were exhibited to Lone Star on a ledger sheet. The Fourth Circuit found no assignment and no lien. *Lone Star*, 93 F.2d at 770. In part, it relied on testimony by a Lone Star representative that the purpose of exhibiting the accounts receivables was to show that the lumber company had a considerable amount of receivables and that funds thereby collected "could and would" be used to pay Lone Star. *Id.* In addition, the court noted that "there seems to be no reason to distinguish promises to pay money from a specific fund

when received from promises to deliver specific goods when manufactured." *Id.*

Similar facts were at the heart of *Virginia Mach. & Well Co. v. Hungerford Coal Co.*, 182 Va. 550, 29 S.E.2d 359, 362 (1944). There, the Well Company was unwilling to supply S.B. Franklin with materials on credit unless Franklin assigned it the money he was to receive under a contract with Mutual Life Insurance Association. The parties orally agreed to these conditions, and the supplies were furnished. Relying on Franklin's testimony that he intended to give absolute control and ownership of the Mutual contract proceeds to the Well Company, the court found that a valid assignment had been executed. *Id.*, 29 S.E.2d at 557. *See also Alexander Bldg. Constr., Inc. v. Richmond Plumbing & Heating Supplies, Inc.*, 213 Va. 470, 193 S.E.2d 696 (1973) (assignment found where supplier ceased providing materials to subcontractor until acceptance by general contractor of signed letter from subcontractor "request[ing] and authoriz[ing] [the general contractor] to make all further payments" due subcontractor to supplier and subcontractor jointly).

▮ Turning to the case at hand, Ms. Graham's intent is dispositive. *Kelly Health Care*, 309 S.E.2d at 307. As with all legal issues that depend on a state of mind, however, the Court is placed in the difficult position of having to "determine" what an individual's mental design was in undertaking and completing an act. Here, as is typical, there is

2. In ruling that McArthur had assigned the $1,200.00 to Rinehart, the court distinguished *Hicks v. Roanoke Brick Co.*, 94 Va. 741, 27 S.E. 596 (1897). In *Hicks*, W.F. Patterson executed an assignment to Fidelity Loan & Trust of all the money that he was to receive under a construction contract with the City of Roanoke. The Bank then wrote to Roanoke Brick Company stating that it would pay them for brick furnished to Patterson from funds it collected from the City. Relying on this letter, Roanoke Brick sent supplies to Patterson. Roanoke Brick alleged that the bank had acted on Patterson's behalf; nevertheless, the court held that Patterson had not assigned his contract proceeds. *Id.*, 27 S.E. at 598.

In *McArthur*, the court noted that the facts of *Hicks* were "entirely different" from the facts before it because McArthur personally gave an order to his attorney dedicating the entire fund to a particular purpose. *McArthur*, 96 S.E. at 834. However, another transaction was also examined in *Hicks*. Patterson had written to Fidelity Loan & Trust directing them to pay his debt to Guggenheimer & Co. out of funds to be received from the City, "this assignment being intended to embrace said fund after the payment of the sums necessary for the current expenses of the work." *Hicks*, 27 S.E. at 599. The court again found no assignment as the order "was not drawn on the debtor of the drawer, nor on any person holding funds belonging to him, and did not place the fund, or any part of it, in the control of the payee." *Id.*

little direct evidence of the Debtor's intent. We are faced with language in a purchase agreement, taken from a form contract, that resembles language used to create an agency relationship.[3] Unlike in many of the cases where an assignment has been found, there was no evidence produced that the brokerage fee provision was the subject of negotiation or that Movants conditioned their performance on obtaining an assignment.

Furthermore, Movants offered no testimony—either through direct or cross-examination—of the Debtor's intent to give and Movants' intent to receive present ownership of six percent of the sale proceeds. Instead of hoping to effect an assignment via the provision at issue, it seems more likely that the Debtor intended to implement a method of paying Movants that was both efficient and expedient. Taking the evidence as a whole, therefore, this Court holds that the Debtor had no intention of assigning a portion of her sale proceeds to Movant; thus, she acted appropriately in claiming her homestead exemption. Accordingly, it is

### ORDERED:

That Movants' Motion to Alter or Amend Judgment be, and it hereby is, DENIED.

---

3. Movants rely on the following contractual provision: "Seller hereby *authorizes and directs* the settlement company to disburse to the Listing Firm and the Selling Firm from Seller's proceeds the respective portions of the fee at settlement." (Emphasis added). However,

> a mere communication to the holder of the fund (the obligor), containing no words of present assignment and merely *authorizing and directing* him to pay to a third party, may

properly bear the interpretation that it is a mere power of attorney to the obligor himself, empowering him to effectuate a transfer by his own subsequent act.

*Kelly Health Care, Inc. v. The Prudential Ins. Co.*, 226 Va. 376, 309 S.E.2d 305, 307–08 (1983) (quoting 4 *Corbin on Contracts* § 862 (1951)) (emphasis added). The appointment of an agent or the grant of a power of attorney does not qualify as an assignment. *Id.*, 309 S.E.2d at 307.