Present:  All the Justices

RICHARD C. EDMUNDS, JR.
                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 001079              April 20, 2001

CBC ENTERPRISES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

In this appeal, we consider whether the plaintiff presented sufficient evidence to establish that he had received an equitable assignment of certain contract payment obligations.

Richard C. Edmunds, Jr., filed his motion for judgment against CBC Enterprises, Inc. (CBC).  Edmunds alleged that CBC had executed two separate subcontracts with Abatement Controllers/JWG, Inc. (Abatement), and that Abatement assigned its rights to receive payments due under the subcontracts to Edmunds.  Edmunds alleged that CBC failed to pay him in accordance with the purported equitable assignment.

At a jury trial, CBC made a motion to strike Edmunds' evidence.  The circuit court took the motion under advisement and at the conclusion of its case, CBC renewed the motion. The circuit court held that Edmunds failed to present sufficient evidence which would permit a jury to find that an equitable assignment existed, granted the motion to strike, and entered a judgment in favor of CBC.  Edmunds appeals.

Because this case was decided upon a motion to strike, we will state the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to Edmunds. Rizzo v. Schiller, 248 Va. 155, 157, 445 S.E.2d 153, 154 (1994). CBC, a general contractor, entered into a contract with the United States Department of the Navy to perform certain construction work at the United States Naval Station in Norfolk. CBC subsequently executed two subcontracts with Abatement. Robert L. Snow, Abatement's president and owner, signed the subcontracts on behalf of Abatement. Edmunds, an individual engaged in numerous business activities, provided operating capital to Abatement in connection with the subcontracts that Abatement had with CBC.

Abatement had performed demolition work for CBC on prior construction projects, and Edmunds had provided operating capital to assist Abatement on those projects. During each of those projects, CBC forwarded a letter to Abatement which stated that payments due Abatement for work performed under its subcontracts would be made directly to Edmunds at his home address in Richmond.

In the summer of 1995, Snow apparently informed Edmunds that Abatement had planned to execute two subcontracts with CBC to perform demolition services at the United States Naval Station in Norfolk. Edmunds agreed to provide operating

capital to Abatement on this project. Edmunds contacted Richard Jakobowski, a vice president with CBC. Edmunds informed Jakobowski that Edmunds had an agreement to provide operating capital to Abatement and requested that CBC forward to Edmunds a written acknowledgment that it would pay funds from the subcontract that were owed to Abatement directly to Edmunds as CBC had done on former projects. Jakobowski responded that he was "extremely busy" and that "he would get on it when he could."

In October 1995, Jakobowski informed Edmunds that CBC had changed its policy, and that CBC would not send checks for work performed by Abatement to him. Edmunds requested a meeting with Jakobowski and during the meeting, which was attended by Edmunds, Jakobowski, and Snow on November 6, 1995, Jakobowski explained again that CBC had changed its policy, and it was unwilling to issue checks payable to Edmunds for work that Abatement had performed on the project. Edmunds responded by asking Jakobowski to approach CBC's management and request written acknowledgment of an assignment as had been provided during previous projects. If CBC was unwilling to issue a written acknowledgment, Edmunds asked that CBC issue joint checks payable to Edmunds and Abatement. If CBC was unwilling to issue joint checks, then Edmunds requested

3

that the checks be made payable to Abatement and forwarded to Edmunds at his Richmond address.

On November 6, 1995, Snow delivered a letter to Jakobowski which stated in part:

> "Please send all future payments for the Camp-Allen Project, [sic] to Mr. R. C. Edmunds Jr. [sic] 6014 St. Andrews La. Richmond, Va. 23326.  Please make these joint checks to R. C. Edmunds an [sic] JWG Inc."

On November 7, 1995, CBC and Abatement executed a change order, described as Change Order No. 2, which stated:

> "In accordance with . . . our Agreement, be advised that your Subcontract for performing the exterior site work demolition required by the project plans and specifications . . . is hereby administratively modified to accommodate your request relative to where the check is mailed.  The new mailing address will be as follows:
> Abatement Controllers
> c/o Mr. R. C. Edmonds [sic]
> 6014 St Andrews Lane
> Richmond, VA  23326"

Apparently unbeknownst to Edmunds, on December 8, 1995, Snow delivered a memorandum to Jakobowski which stated in part:

> "Void Change Order No. 2 dated Nov. 7-95. Please pay all checks directly to Robert Snow to pick up by him only.  Thank you for your co-operation [sic]."

Edmunds did not receive any payments directly from CBC after Change Order No. 2 was executed.  On December 12, 1995, CBC issued a check in the amount of $34,913 payable solely to

4

Abatement for work it had performed on the project. Snow died in 1998, and the trial of this case commenced on February 8, 2000.

Edmunds argues that the circuit court "erred in ruling that there was insufficient evidence to establish that Abatement had assigned to Edmunds funds due it for work it performed under subcontracts with CBC." We disagree with Edmunds.

Our resolution of this appeal is governed by familiar and well-established legal principles within the jurisprudence of this Commonwealth. "It is settled law that as a general rule the obligation arising under a contract may be assigned to a third party, the assignment or transfer may be made to appear by oral statements of the parties, or by their acts and conduct." Dove Co. v. New River Coal Co., 150 Va. 796, 826-27, 143 S.E. 317, 327 (1928).

An assignment is a transfer, but every transfer does not constitute an assignment. Kelly Health Care v. Prudential, 226 Va. 376, 379, 309 S.E.2d 305, 307 (1983). "To constitute an equitable assignment there must be an assignment or transfer of the fund or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer." Hicks v. Roanoke

5

Brick Co., 94 Va. 741, 745-46, 27 S.E. 596, 598 (1897).

Additionally:

> "It is well settled in this jurisdiction that since equity disregards mere form, no particular words or acts are necessary to effect an equitable assignment. The intention of the assignor is the controlling consideration. The intent to transfer a present ownership of the subject matter of the assignment to the assignee must be manifested by some word, written or oral, or by some act inconsistent with the assignor's remaining as owner. This has sometimes been called a 'present appropriation.' The assignor must not retain any control over the fund or property assigned, any authority to collect, or any form of revocation. See Switzer v. Noffsinger, 82 Va. 518; Chesapeake Classified Building Association v. Coleman & Others, 94 Va. 433, 26 S.E. 843; Rinehart & Dennis Co. v. McArthur, 123 Va. 556, 96 S.E. 829; Va. Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550, 29 S.E.2d 359 . . . ."

Nusbaum & Co. v. Atlantic Realty, 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966).

In Kelly Health Care, 226 Va. at 379, 309 S.E.2d at 307, we emphasized that to establish a valid assignment, the assignor must not retain any control over the fund or property assigned, any authority to collect the fund or property, or any form of revocation of the fund or property. Simply stated, if the assignor retains any control whatsoever over the fund or property to be assigned, then an assignment has not been effected.

Applying the aforementioned principles, we hold that the circuit court did not err in granting CBC's motion to strike

6

Edmunds' evidence. Edmunds failed to present sufficient evidence which would have permitted the jury to find that Abatement relinquished control of the funds that CBC owed Abatement for the demolition work Abatement had performed. The uncontroverted evidence of record indicates that Snow had directed CBC to issue checks jointly payable to Abatement and Edmunds. Edmunds failed to present evidence that Snow, acting on behalf of Abatement, intended to relinquish all control of the funds, and Abatement's directive that CBC issue joint checks demonstrates that Abatement intended to retain some degree of control over the property that was purportedly assigned. For example, Code § 8.3A-110(d) provides: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."

We recognize that in Virginia Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550, 29 S.E.2d 359 (1944), we held that a transfer constituted an equitable assignment even though the assignor had directed the holder of the assigned fund to issue a joint check payable to both the assignor and assignee. In Virginia Machinery & Well Co., the assignor testified without contradiction that he intended to give absolute control and absolute ownership of the money that would be owed to him under a contract to the assignee and that

7

the assignor requested checks payable jointly because the holder of the fund, a financial institution, wanted a receipt. Id. at 554-55, 29 S.E.2d at 362. The assignee also testified, through its president, that it would have complete control over the fund. Id. at 555, 29 S.E.2d at 362. We held that the assignment at issue in Virginia Machinery & Well Co.,

> "according to the undisputed evidence, transferred absolutely and unconditionally all of the interest of the assignor in the fund and [the assignee] testified that such was his intention. The method for making the payment by a joint check was only for the purpose of providing a receipt to [the holder of the fund] and giving information to [the assignor] of the amount received by [the assignee]."

Id. at 557, 29 S.E.2d at 363.[*]

Unlike the assignee in Virginia Machinery & Well Co., Edmunds failed to present sufficient evidence that Abatement had relinquished control of the fund that CBC would owe to Abatement after it had performed the work. Indeed, Snow's memorandum which "voided" the change order directing CBC to forward checks to Edmunds' Richmond address suggests that Abatement had not intended to relinquish control of the payments owed to it by CBC.

---

[*] Former Code § 5603, which was in effect at the time this Court decided Virginia Machinery & Well Co. stated: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners all must indorse unless the one indorsing has authority to indorse for the others." We did not discuss what effect, if any, this former statute had upon

Edmunds, relying upon Alexander Building v. Richmond Plumbing, 213 Va. 470, 193 S.E.2d 696 (1973), argues that this Court has held that an equitable assignment existed when an assignor requested a debtor to issue checks jointly payable to the assignor and the assignee. In Alexander Building, a general contractor was retained to construct an apartment project. W. G. Satterwhite was a subcontractor employed by the general contractor, Alexander Building. Satterwhite purchased supplies from Richmond Plumbing. Richmond Plumbing, concerned about Satterwhite's credit, advised him that it would not supply materials unless he could give assurance of payment.

Satterwhite requested in a letter to Alexander Building that it issue checks for all further payments due Satterwhite jointly to Richmond Plumbing and Satterwhite. Alexander Building's authorized agent signed the letter "accepted," and the letter was returned to Richmond Plumbing's agents. Alexander Building issued a check payable to Richmond Plumbing and Satterwhite as joint payees and after Satterwhite endorsed the check, Richmond Plumbing deposited the check in its account. Subsequently, upon Satterwhite's representation that he had "settled" with Richmond Plumbing, Alexander Building

the equitable assignment at issue in Virginia Machinery & Well Co.

9

delivered to Satterwhite a check made payable solely to Satterwhite for the balance due on his subcontract with Alexander Building. Richmond Plumbing later discovered that Alexander Building had made the final payment to Satterwhite even though Satterwhite was still indebted to Richmond Plumbing in the amount of $2,494.82, the balance owed for certain materials that Richmond Plumbing had supplied to Satterwhite for the project. We held that the circuit court did not err by ruling that an equitable assignment existed. Id. at 471-72, 193 S.E.2d at 697-98.

Alexander Building, however, is not controlling here. We did not discuss in Alexander Building whether Satterwhite, the assignor, had relinquished his control over the property assigned. That issue was simply not discussed in the opinion. Additionally, Alexander Building's authorized agent agreed in writing that Alexander Building would make further payments that it owed to Satterwhite jointly to Richmond Plumbing and Satterwhite. By contrast, in this appeal, Edmunds admitted that CBC did not agree to issue joint checks for amounts due Abatement for work performed under the subcontracts. Additionally, the change order executed by CBC and Abatement on November 7, 1995, did not include a provision for the issuance of joint checks.

Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE LACY, with whom JUSTICE KINSER and JUSTICE LEMONS join, dissenting.

The majority concludes that plaintiff's evidence of an equitable assignment was properly struck by the trial court because Edmunds "failed to present evidence that Snow, acting on behalf of Abatement, intended to relinquish all control of the funds." To reach this result, the majority attempts to distinguish controlling case law and claims to apply well-established standards of appellate review, but fails on both counts.

To strike Edmunds' evidence, the trial court in this case had to conclude that the evidence was insufficient to support a jury verdict in his favor. The trial court was required to accept as true all the evidence favorable to Edmunds as well as any reasonable inference a jury might draw therefrom which would sustain his cause of action. The trial court was not to judge the weight and credibility of the evidence or to reject any inference from the evidence favorable to Edmunds unless it would defy logic and common sense. Austin v. Shoney's , Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997). On appellate

11

review, we apply these same principles.  Waters v. Safeway Stores, Inc., 246 Va. 269, 270, 435 S.E.2d 380, 380 (1993).

While the majority recites much of the evidence produced at trial, it ignores additional evidence that had been introduced.  Beginning in 1989, Edmunds and Snow developed a business relationship whereby Edmunds would provide Snow with working capital for projects performed by Abatement.  In 1993 or 1994 when Abatement first performed work for CBC, Edmunds and Snow had an agreement that Edmunds "would provide the operating capital and when the funds came in from [Snow's] customer they would come to [Edmunds]."  Six or seven projects were undertaken this way.  In each of these projects, Edmunds received a copy of a letter sent from CBC to Snow referencing an agreement between Snow, CBC, and Edmunds that payments for the work done by Snow would be made directly to Edmunds.

Prior to the execution of the CBC contract at issue here, Edmunds and Snow discussed what their business relationship would be if Abatement got the contract.  Edmunds again agreed to provide Abatement operating capital for the project, and, in return, Edmunds was to get the "assignment of monies" to him.  Edmunds testified that in August, "Mr. Snow had assigned the proceeds to me like we had previously been doing on all other contracts."  The contract was executed between Abatement and Snow on August 18, 1995.  Edmunds informed CBC of his

12

agreement with Snow and asked CBC for a letter like the previous ones confirming the assignment.  CBC, however, did not send a letter confirming the assignment for this project because there was a change in company policy.

At a meeting between CBC, Edmunds, and Snow, Edmunds suggested three solutions in the order of his preference:  (1) that the former procedure be followed, (2) that the checks be made jointly payable to Edmunds and Abatement, or (3) that Abatement's checks be mailed to Edmunds in Richmond.  With regard to the last option, Edmunds explained that because Abatement was a Tidewater company, by sending the checks directly to Richmond "there's no chance of it being mishandled by anybody."  Edmunds could then deposit the checks into an already-existing bank account in Richmond set up by Snow in the name of Abatement Controllers/JWG, Inc.  Edmunds "was the only authorized signature to write checks on this account for Abatement . . . ."  Likewise, statements for the account were sent only to Edmunds' address.

Following this meeting, Snow sent a letter to CBC asking that the checks be made jointly payable to Edmunds and Abatement and that the checks be sent to Edmunds at his address in Richmond.  Change Order No. 2 was entered, directing that Abatement's checks be sent to Edumunds.  However, Edmunds never received any checks from CBC because

CBC complied with Snow's subsequent request to void Change Order No. 2 and to pay Snow directly.

The majority acknowledges that the following principles apply to the creation of equitable assignments, but fails to apply them properly to the evidence presented. Equitable assignments need not be written; they may be shown by the parties' oral statements, acts, or conduct. Va. Mach. & Well Co. v. Hungerford Coal Co., 182 Va. 550, 556, 29 S.E.2d 359, 362 (1944). Although it is true that the assignor must not retain control over the funds assigned, the intent of the assignor is the controlling consideration in determining whether control has been relinquished. S.L. Nusbaum & Co. v. Atl. Va. Realty Corp., 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966).

The majority points to four pieces of evidence in support of its conclusion that the evidence was insufficient to support a jury verdict finding the existence of an equitable assignment: Snow's instruction to CBC to issue jointly payable checks; Edmunds' admission that "CBC did not agree to issue joint checks for amounts due Abatement"; the failure of Change Order No. 2 to provide for the issuance of joint checks; and Snow's directive to CBC to void Change Order No. 2 and pay Snow directly. Under our existing case law, none of

14

these facts defeats the creation of an equitable assignment as a matter of law.

According to the majority, ordering the issuance of joint checks showed that Snow intended to retain "some degree of control over the property that was purportedly assigned," (Maj. op. Pg. 7.) thereby defeating the creation of an equitable assignment. However, in both Virginia Machinery & Well Co., and Alexander Building Construction, Inc. v. Richmond Plumbing & Heating Supplies, Inc., 213 Va. 470, 193 S.E.2d 696 (1973), we held that an equitable assignment had been created, even though the payments by the debtor were made jointly to the assignor and assignee. "The form in which the checks were requested to be drawn neither legally nor equitably affected the ownership or control of the funds represented." Va. Mach. & Well Co., 182 Va. at 557-58, 29 S.E.2d at 363.

Though other evidence may prove or disprove the creation of an equitable assignment, jointly payable checks are, at most, equivocal evidence of an absence of intent to relinquish control over the funds and create an equitable assignment. For instance, in Virginia Machinery & Well Co., we noted that paying by joint check may be done for the purpose of providing a receipt to the assignor's debtor and giving information to the assignor of the amount received by the assignee. 182 Va.

15

at 557, 29 S.E.2d at 363.  In the context of this case, where checks had been made payable solely to the assignee, but the drawer now wished to make them payable only to the assignor, Snow's request for joint checks can be seen as an intent to ensure payment to the assignee in a manner acceptable to the drawer.  When more than one inference can be drawn from the facts, the inference favoring the position of the plaintiff must be adopted when considering whether a motion to strike should be granted.  The majority ignores this principle when it opines that Abatement's directive to issue jointly payable checks demonstrated an intent to maintain control over the funds.

Next, the majority points to Edmunds' admission that CBC did not agree to issue joint checks for the funds due Abatement on the project.  However, written confirmation of an assignment by the assignee's debtor does not create the equitable assignment; it "merely evidence[s] notice of the assignment." Va. Mach. & Well Co., 182 Va. at 557, 29 S.E.2d at 363.  Thus the "admission" relied upon by the majority, while evidence in the case that CBC did not wish to issue joint checks, does not defeat the creation of the equitable assignment between Edmunds and Snow.

The final two pieces of evidence supporting the majority's conclusion are equally deficient.  The majority

16

cites not including joint payment of checks in Change Order No. 2 as showing a lack of intent to relinquish control over the funds and to create an equitable assignment. First, that decision appears to have been made by CBC and does not provide evidence of Snow's intent. Second, this position is in direct conflict with the majority's earlier assumption that seeking joint payment shows a lack of such intent. Thus, the value of this evidence in supporting a conclusion that Snow did not intend to relinquish control over the funds and create an equitable assignment is suspect.

Finally, Snow's duplicity in subsequently voiding his previous request to CBC regarding the joint payment and delivery of the checks should not be rewarded by considering it as proof positive that Snow never agreed to the equitable assignment. Of course, the posture of this case requires that any inferences from this evidence flow in favor of Edmunds. The inference here is that Snow wanted to avoid honoring his agreement with Edmunds.

In both Virginia Machinery & Well Co. and Alexander Building, the evidence was found to be sufficient to support a conclusion that an equitable assignment was created. In this case, we need not decide whether an equitable assignment was created. We must determine only whether the evidence was sufficient to support such a finding. Whether evidence exists

17

to support a contrary finding is immaterial at this juncture. The pattern of prior assignment agreements between Edmunds and Snow, the oral agreement testified to by Edmunds regarding the assignment of the funds on the project at issue, the presence of Snow at a meeting with Edmunds and CBC regarding Edmunds' request to CBC for direct payment, joint payment, or direct delivery of the checks to Edmunds, Snow's acquiescence in those requests reflected in Snow's subsequent letters and meetings with CBC, and the bank account established by Snow for Abatement's checks with Edmunds as the only authorized signatory all constitute sufficient evidence of Snow's intent to assign the proceeds of Abatement's contract with CBC to Edmunds.  Therefore, this issue should not be decided by this Court or by the trial court, but rather should be submitted to the jury for determination.  Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings.