JUSTICE HASSELL
delivered the opinion of the Court.
In this appeal, we consider whether the plaintiff presented sufficient evidence to establish that he had received an equitable assignment of certain contract payment obligations.
Richard C. Edmunds, Jr., filed his motion for judgment against CBC Enterprises, Inc. (CBC). Edmunds alleged that CBC had executed two separate subcontracts with Abatement Controllers/JWG, Inc. (Abatement), and that Abatement assigned its rights to receive payments due under the subcontracts to Edmunds. Edmunds alleged *434 that CBC failed to pay him in accordance with the purported equitable assignment.
At a jury trial, CBC made a motion to strike Edmunds’ evidence. The circuit court took the motion under advisement and at the conclusion of its case, CBC renewed the motion. The circuit court held that Edmunds failed to present sufficient evidence which would permit a jury to find that an equitable assignment existed, granted the motion to strike, and entered a judgment in favor of CBC. Edmunds appeals.
Because this case was decided upon a motion to strike, we will state the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to Edmunds. Rizzo v. Schiller, 248 Va. 155, 157, 445 S.E.2d 153, 154 (1994). CBC, a general contractor, entered into a contract with the United States Department of the Navy to perform certain construction work at the United States Naval Station in Norfolk. CBC subsequently executed two subcontracts with Abatement. Robert L. Snow, Abatement’s president and owner, signed the subcontracts on behalf of Abatement. Edmunds, an individual engaged in numerous business activities, provided operating capital to Abatement in connection with the subcontracts that Abatement had with CBC.
Abatement had performed demolition work for CBC on prior construction projects, and Edmunds had provided operating capital to assist Abatement on those projects. During each of those projects, CBC forwarded a letter to Abatement which stated that payments due Abatement for work performed under its subcontracts would be made directly to Edmunds at his home address in Richmond.
In the summer of 1995, Snow apparently informed Edmunds that Abatement had planned to execute two subcontracts with CBC to perform demolition services at the United States Naval Station in Norfolk. Edmunds agreed to provide operating capital to Abatement on this project. Edmunds contacted Richard Jakobowski, a vice president with CBC. Edmunds informed Jakobowski that Edmunds had an agreement to provide operating capital to Abatement and requested that CBC forward to Edmunds a written acknowledgment that it would pay funds from the subcontract that were owed to Abatement directly to Edmunds as CBC had done on former projects. Jakobowski responded that he was “extremely busy” and ¿hat “he would get on it when he could.”
In October 1995, Jakobowski informed Edmunds that CBC had changed its policy, and that CBC would not send checks for work *435 performed by Abatement to him. Edmunds requested a meeting with Jakobowski and during the meeting, which was attended by Edmunds, Jakobowski, and Snow on November 6, 1995, Jakobowski explained again that CBC had changed its policy, and it was unwilling to issue checks payable to Edmunds for work that Abatement had performed on the project. Edmunds responded by asking Jakobowski to approach CBC’s management and request written acknowledgment of an assignment as had been provided during previous projects. If CBC was unwilling to issue a written acknowledgment, Edmunds asked that CBC issue joint checks payable to Edmunds and Abatement. If CBC was unwilling to issue joint checks, then Edmunds requested that the checks be made payable to Abatement and forwarded to Edmunds at his Richmond address.
On November 6, 1995, Snow delivered a letter to Jakobowski which stated in part:
“Please send all future payments for the Camp-Alien Project, [sic] to Mr. R. C. Edmunds Jr. [sic] 6014 St. Andrews La. Richmond, Va. 23326. Please make these joint checks to R. C. Edmunds an [sic] JWG Inc.”
On November 7, 1995, CBC and Abatement executed a change order, described as Change Order No. 2, which stated:
“In accordance with . . . our Agreement, be advised that your Subcontract for performing the exterior site work demolition required by the project plans and specifications ... is hereby administratively modified to accommodate your request relative to where the check is mailed. The new mailing address will be as follows:
Abatement Controllers c/o Mr. R. C. Edmonds [sic]
6014 St Andrews Lane Richmond, VA 23326”
Apparently unbeknownst to Edmunds, on December 8, 1995, Snow delivered a memorandum to Jakobowski which stated in part:
“Void Change Order No. 2 dated Nov. 7-95. Please pay all checks directly to Robert Snow to pick up by him only. Thank you for your co-operation [sic].”
*436 Edmunds did not receive any payments directly from CBC after Change Order No. 2 was executed. On December 12, 1995, CBC issued a check in the amount of $34,913 payable solely to Abatement for work it had performed on the project. Snow died in 1998, and the trial of this case commenced on February 8, 2000.
Edmunds argues that the circuit court “erred in ruling that there was insufficient evidence to establish that Abatement had assigned to Edmunds funds due it for work it performed under subcontracts with CBC.” We disagree with Edmunds.
Our resolution of this appeal is governed by familiar and well-established legal principles within the jurisprudence of this Commonwealth. “It is settled law that as a general rule the obligation arising under a contract may be assigned to a third party, the assignment or transfer may be made to appear by oral statements of the parties, or by their acts and conduct.” Dove Co. v. New River Coal Co., 150 Va. 796, 826-27, 143 S.E. 317, 327 (1928).
An assignment is a transfer, but every transfer does not constitute an assignment. Kelly Health Care v. Prudential, 226 Va. 376, 379, 309 S.E.2d 305, 307 (1983). “To constitute an equitable assignment there must be an assignment or transfer of the fund or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer.” Hicks v. Roanoke Brick Co., 94 Va. 741, 745-46, 27 S.E. 596, 598 (1897). Additionally:
“It is well settled in this jurisdiction that since equity disregards mere form, no particular words or acts are necessary to effect an equitable assignment. The intention of the assignor is the controlling consideration. The intent to transfer a present ownership of the subject matter of the assignment to the assignee must be manifested by some word, written or oral, or by some act inconsistent with the assignor’s remaining as owner. This has sometimes been called a ‘present appropriation.’ The assignor must not retain any control over the fund or property assigned, any authority to collect, or any form of revocation. See Switzer v. Naffsinger, 82 Va. 518; Chesapeake Classified Building Association v. Coleman & Others, 94 Va. 433, 26 S.E. 843; Rinehart & Dennis Co. v. McArthur, 123 Va. 556, 96 S.E. 829; Va. Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550. 29 S.E.2d 359 .. . .”
*437 Nusbaum & Co. v. Atlantic Realty, 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966).
In Kelly Health Care, 226 Va. at 379, 309 S.E.2d at 307, we emphasized that to establish a valid assignment, the assignor must not retain any control over the fund or property assigned, any authority to collect the fund or property, or any form of revocation of the fund or property. Simply stated, if the assignor retains any control whatsoever over the fund or property to be assigned, then an assignment has not been effected.
Applying the aforementioned principles, we hold that the circuit court did not err in granting CBC’s motion to strike Edmunds’ evidence. Edmunds failed to present sufficient evidence which would have permitted the jury to find that Abatement relinquished control of the funds that CBC owed Abatement for the demolition work Abatement had performed. The uncontroverted evidence of record indicates that Snow had directed CBC to issue checks jointly payable to Abatement and Edmunds. Edmunds failed to present evidence that Snow, acting on behalf of Abatement, intended to relinquish all control of the funds, and Abatement’s directive that CBC issue joint checks demonstrates that Abatement intended to retain some degree of control over the property that was purportedly assigned. For example, Code § 8.3A-110(d) provides: “If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.”
We recognize that in Virginia Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550, 29 S.E.2d 359 (1944), we held that a transfer constituted an equitable assignment even though the assignor had directed the holder of the assigned fund to issue a joint check payable to both the assignor and assignee. In Virginia Machinery & Well Co., the assignor testified without contradiction that he intended to give absolute control and absolute ownership of the money that would be owed to him under a contract to the assignee and that the assignor requested checks payable jointly because the holder of the fund, a financial institution, wanted a receipt. Id. at 554-55, 29 S.E.2d at 362. The assignee also testified, through its president, that it would have complete control over the fund. Id. at 555, 29 S.E.2d at 362. We held that the assignment at issue in Virginia Machinery & Well Co.,
“according to the undisputed evidence, transferred absolutely and unconditionally all of the interest of the assignor in the *438 fund and [the assignee] testified that such was his intention. The method for making the payment by a joint check was only for the purpose of providing a receipt to [the holder of the fund] and giving information to [the assignor] of the amount received by [the assignee].”
Id. at 557, 29 S.E.2d at 363.*
Unlike the assignee in Virginia Machinery & Well Co., Edmunds failed to present sufficient evidence that Abatement had relinquished control of the fund that CBC would owe to Abatement after it had performed the work. Indeed, Snow’s memorandum which “voided” the change order directing CBC to forward checks to Edmunds’ Richmond address suggests that Abatement had not intended to relinquish control of the payments owed to it by CBC.
Edmunds, relying upon Alexander Building v. Richmond Plumbing, 213 Va. 470, 193 S.E.2d 696 (1973), argues that this Court has held that an equitable assignment existed when an assignor requested a debtor to issue checks jointly payable to the assignor and the assignee. In Alexander Building, a general contractor was retained to construct an apartment project. W. G. Satterwhite was a subcontractor employed by the general contractor, Alexander Building. Satterwhite purchased supplies from Richmond Plumbing. Richmond Plumbing, concerned about Satterwhite’s credit, advised him that it would not supply materials unless he could give assurance of payment.
Satterwhite requested in a letter to Alexander Building that it issue checks for all further payments due Satterwhite jointly to Richmond Plumbing and Satterwhite. Alexander Building’s authorized agent signed the letter “accepted,” and the letter was returned to Richmond Plumbing’s agents. Alexander Building issued a check payable to Richmond Plumbing and Satterwhite as joint payees and after Satterwhite endorsed the check, Richmond Plumbing deposited the check in its account. Subsequently, upon Satterwhite’s representation that he had “settled” with Richmond Plumbing, Alexander Building delivered to Satterwhite a check made payable solely to Satterwhite for the balance due on his subcontract with Alexander Building. Richmond Plumbing later discovered that Alexander Build *439 ing had made the final payment to Satterwhite even though Satterwhite was still indebted to Richmond Plumbing in the amount of $2,494.82, the balance owed for certain materials that Richmond Plumbing had supplied to Satterwhite for the project. We held that the circuit court did not err by ruling that an equitable assignment existed. Id. at 471-72, 193 S.E.2d at 697-98.
Alexander Building, however, is not controlling here. We did not discuss in Alexander Building whether Satterwhite, the assignor, had relinquished his control over the property assigned. That issue was simply not discussed in the opinion. Additionally, Alexander Building’s authorized agent agreed in writing that Alexander Building would make further payments that it owed to Satterwhite jointly to Richmond Plumbing and Satterwhite. By contrast, in this appeal, Edmunds admitted that CBC did not agree to issue joint checks for amounts due Abatement for work performed under the subcontracts. Additionally, the change order executed by CBC and Abatement on November 7, 1995, did not include a provision for the issuance of joint checks.
Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

 Former Code § 5603, which was in effect at the time this Court decided Virginia Machinery & Well Co. stated: “Where an instrument is payable to the order of two or more payees or indorsees who are not partners all must indorse unless the one indorsing has authority to indorse for the others.” We did not discuss what effect, if any, this former statute had upon the equitable assignment at issue in Virginia Machinery & Well Co.